### CLEARY v. McADOO et al.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

INJUNCTION—POLICE INTERFERENCE WITH BUSINESS—SUSPECTED VIOLATION OF LAW—GROUNDS FOR BELIEF.

> In a suit for injunction to restrain police officers from entering plaintiff's premises or remaining in the halls and doorways adjacent thereto and interfering with plaintiff's customers, plaintiff's affidavits stated that he was conducting an agency for the distribution of news consisting of stock quotations, the results of baseball games, horse racing, athletic contests, and like sporting news. Defendants showed that persons who were known to be engaged in the business of selling pools on horse races were seen constantly going in and out of defendants' premises; that at a time when the premises had been entered and plaintiff arrested the door had been found locked, and was opened only when the officers threatened to break it in; that within defendants' room was found the usual paraphernalia of a pool room; that racing sheets of the three principal tracks in the country were found in the room; that plaintiff gave an assumed name and was personally known to some of the persons to have been engaged in the business of selling pools. *Held*, that the facts were sufficient to show that the officers had reasonable cause to believe that plaintiff was violating the law, and hence an injunction would not be issued to prevent further police interference.

Appeal from Special Term, New York County.

Action by Patrick Cleary against William McAdoo and others. From an order granting a temporary injunction, defendants appeal. Reversed.

Appeal by defendants from an order of Special Term enjoining each of them, both individually and in his official capacity as a member of the police force of the city of New York, and the officers under their command, "from maintaining policemen, or police officers, in front of or adjacent to the entrance to room 904, leased or occupied by the plaintiff herein, at No. 99 Nassau street, in the borough of Manhattan, city of New York, and also from keeping, stationing, and maintaining in front of or adjacent to said room, and in the halls or at the doorway leading thereto, any of the officers under the command of the said defendants or either of them, against the will of this plaintiff, or to unlawfully interfere with the customers and patrons of his said business or persons desiring to do business with this plaintiff at said room 904, and persons lawfully entering upon said premises occupied by the plaintiff herein, and from unlawfully interfering with the possession or control of said premises by plaintiff herein, or from unlawfully trespassing upon said premises, or from removing or destroying any of the plaintiff's chattels or property in said room occupied by plaintiff, without due warrant or process of law."

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Terence Farley, for appellants.
Maurice Meyer, for respondent.

LAUGHLIN, J.   This is a suit in equity for permanent relief of the same nature and effect as that granted by the temporary injunction order.   The plaintiff alleges, and shows by affidavits, that he is conducting in room 904 in the building known as No. 99 Nassau street an agency for the distribution of news, consisting of stock quotations, the results of baseball games, horse racing, athletic contests, and like sporting news; that he furnishes this news to various persons throughout the boroughs of Manhattan and Brooklyn by means of telephones at a monthly expense of $2,500; that the police became suspicious that he was running a poolroom, in violation of secton 351 of the Penal Code, and on or about the 26th day of May, 1905, the captain of the precinct in which the premises are located, accompanied by three officers, visited the room occupied by the plaintiff, demanded admittance, and were admitted under protest, as they had an ax and sledge hammer, and arrested the plaintiff and two of his employés; that at the time of the arrest the plaintiff and his employés were engaged in the lawful business of conducting said agency, and were not guilty of any violation of the law; that the officers who made the arrest tore and chopped out and removed the telephones, and the captain informed the plaintiff that, if the latter continued to occupy the premises, the officers would continue to re-enter the premises and remove the telephones, using force if necessary; that the plaintiff and his employés, after a hearing before a magistrate, were duly discharged; that since the arrest, daily for many weeks, police officers, under the command of the defendants, attempted to enter the plaintiff's premises to inspect the same and threatened to force their way in if refused admittance; that plaintiff was informed by the captain when arrested that he was acting by direction of his superior officers, who suspected that a poolroom was being conducted on the premises, and that defendants "stationed and kept" patrolmen at plaintiff's place of business.

The defendants show, in opposition to the motion, that on the day of the arrest the captain who made it received information that led him to believe that in said room "there was being carried on forwarding and registering of bets upon the speed of horses, in violation of section 351 of the Penal Code"; that a number of the men who the captain knew to have been engaged in the business of selling pools upon horse racing were seen constantly going in and out of said room; that, when he visited the premises at the time of making the arrest, the only sign upon the door was "Bay State Traction Company"; that the door was locked, and, upon the officers knocking for admission, admittance was refused, and the door was not opened until they threatened to break in; that they found within the usual paraphernalia of a poolroom, and three telephones were in operation, and racing sheets of the races in New York, Louisville, and St. Louis were found in the room; that the plaintiff gave the name of Donelly; that one of the officers who assisted in making the arrest personally knew the plaintiff and his two employés who were arrested "to have been engaged in the business of selling pools," and that, at the time of the arrest, there were pinned

to the table, in front of the three operators, racing sheets relating to the races upon the New York, Louisville, and St. Louis tracks; that the officers who made the arrest acted in good faith and in performance of what they believed to be their duty as officials.

The injunction order was granted prior to the decision of the Court of Appeals in Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, and we are asked to reverse the order upon the authority of that decision, and upon the theory that a court of equity has no jurisdiction to issue an injunction order against members of the police force. I am unwilling to subscribe to that doctrine, for the reasons assigned in the opinion in Burns v. McAdoo et al. (decided herewith) 99 N. Y. Supp. 51, and I believe that such a rule would be against public policy and inimical to the liberties and rights of the people guarantied by the Constitution. In the case at bar the plaintiff does not very satisfactorily show the legitimacy of his business, and the facts presented by the defendants are sufficient to show that they had probable cause to believe that he was conducting a poolroom, which is a felony. I am of opinion therefore that the injunction order was improperly granted, and should be vacated.

It follows that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur; INGRAHAM and CLARKE, JJ., in result.

---

### In re PILSBURY'S WILL.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

1. WILLS—PROBATE—VALIDITY.

Under Code Civ. Proc. § 2624, providing that, if a party expressly puts in issue before the surrogate the validity, construction, or effect of any disposition of personal property by a will, he must determine the question on rendering the decree, unless he refuses probate by reason of failure to prove execution of the will or the testator's capacity or freedom from restraint, as required by section 2623, on proof of these matters a will is to be admitted to probate without regard to the construction or validity of its provisions, which is then to be determined.

2. PERPETUITIES—EXECUTION OF POWER BY WILL.

Under Laws 1897, p. 507, c. 417, § 2 (Gen. Laws, p. 3900, c. 47) providing that the absolute ownership of personal property shall not be suspended for more than two lives in being, and that in other respects limitations of future and contingent interests in personalty are subject to the rules relating to real property, and Laws 1896, p. 583, c. 547, § 158 (Gen. Laws, p. 3824, c. 46), providing that the period during which alienation may be suspended by an instrument in execution of a power must not be computed from the date of the instrument, but from the creation of the power, a provision of a will in execution of a power, suspending the ownership of personalty for the life of a person not in being at the creation of the power, is void.

3. WILLS—REVOCATION—SUBSEQUENT WILLS.

Where a subsequent will contains no express revocation of a prior will, and certain provisions of the subsequent will are invalid, the prior will is not revoked, but both must be admitted to probate and given effect so far as their valid provisions are consistent.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 456.]