KALWIN BUSINESS MEN'S ASSOCIATION, INC., Respondent, *v.* GEORGE V. McLAUGHLIN, Individually and as Police Commissioner of the City of New York, and Others, Appellants.

Second Department, March 5, 1926.

Injunction — action for injunction to restrain police commissioner of city of New York and police officials from unlawfully interfering with plaintiff — motion for injunction pendente lite — police commissioner acted honestly in raiding so-called clubs operated by plaintiff — affidavits showed that alleged clubs were gambling places and were operated as such — injunction pendente lite should not have been granted.

In an action to restrain the police commissioner and police officials of the city of New York from unlawfully interfering with or oppressing the plaintiff, its members or employees, and from any forceful or unlawful entry into certain premises belonging to plaintiff, an injunction *pendente lite* should not have been granted, since it appears that the police commissioner under whose authority two so-called clubs operated by the plaintiff were raided was acting honestly in the performance of his duty, and that the affidavits show that the alleged clubs were gambling places and were operated by well-known professional gamblers who at the time were under indictment and awaiting trial for conducting a disorderly house; it is only in rare instances that an injunction *pendente lite* should be granted restraining police officials from performing acts which they honestly conceive to be within their duty.

APPEAL by the defendants, George B. McLaughlin, individually and as police commissioner of the city of New York, and others, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 4th day of February, 1926, as resettled by an order entered in said clerk's office on the 1st day of March, 1926, granting plaintiff's motion for an injunction restraining the defendants, police officials of the city of New York and the police force of said city, pending the trial of the action, from unlawfully interfering with or oppressing the plaintiff, its members or employees, and from any forceful or unlawful entry into premises occupied by plaintiff at No. 592 Atlantic avenue, in the borough of Brooklyn, and No. 119 West Thirty-third street, in the borough of Manhattan in said city.

*Charles L. Craig [George P. Nicholson, Corporation Counsel*, with him on the brief], for the appellants.

*Joseph A. Solovei*, for the respondent.

KELLY, P. J.   We think it was an abuse of discretion on the part of the learned justice at Special Term to grant this injunction against the police authorities pending the trial of the action.   There

is no suggestion that the defendant police commissioner or the chief inspector are actuated by any improper motives in their entry into plaintiff's so-called social club in West Thirty-third street, Manhattan, opposite the Pennsylvania station, or the somewhat unusual branch club in Atlantic avenue, opposite the Long Island railroad station in Brooklyn. The learned justice at Special Term in his opinion filed, does not question the motives of the police commissioner. He says: " The police commissioner appeared in person on the argument of the motion and made a strong plea for the observance of the law, claiming that he would be handicapped in his duty should the injunction be granted. He also urged that section 315 of the Greater New York charter,* which makes it the duty of the police to at all times preserve the public peace, prevent crimes, inspect all gambling houses and to arrest all persons guilty of violating the law, justified the police in invading and continuing as trespassers on the premises. The plea was both earnest and honest."

The plaintiff, claiming to be an association of reputable business men meeting at the West Thirty-third street address in Manhattan and at the so-called branch club house in Atlantic avenue, Brooklyn, says that the club is organized for social purposes, with a gymnasium at the Thirty-third street establishment for the use of the members, who are reputable citizens and who are not engaged in any violation of the law. On the other hand, the police authorities insist that the so-called " clubs " were gambling houses conducted by well-known professional gamblers under indictment in New York county awaiting trial for conducting a disorderly house. The defendants make affidavit that when the police visited the " club " on January 8, 1926, in consequence of complaints received that gambling was conducted in the premises, they found that the " club " room was protected by " ice box " doors eight inches thick, equipped with peep holes, and before reaching these doorways the club members and the police had to pass through an iron-barred gate which was locked and opened by a doorkeeper stationed inside, who, the police say, has been arrested several times under various *aliases* in other gambling rooms. The windows in the rear of the club were barred, in the front they were covered by dark shades. On the walls were displayed racing charts, and torn lists of race horses were found about the floor which were presented to the court on the argument. There was a table covered with green cloth in the center of the room with high boards on the sides, which the police say is used in the " game of craps." The plaintiff says it

---

* Laws of 1901, chap. 466, § 315, as amd. by Laws of 1914, chap. 455.— [REP.

was a billiard table, but there is no suggestion that there was a single cue or billiard ball in evidence, any more than there was evidence of a gymnasium which is one of the appendages to the club mentioned in the plaintiff's affidavits. The defendants allege that the place was in charge of a professional gambler, naming him, and that one of the men present stated to the police that upon his arrival in New York city at the Pennsylvania station he was accosted by a " steerer," who told him that a poolroom was being conducted in the premises, furnished him with information how to get in, and assured him that the place would not be molested by the police as it was protected by an injunction.

The police say that when they entered the premises on January 8, 1926, about five-thirty P. M., they found therein fifty-six men, many of whom had been arrested from one to fifteen times previously in various gambling houses in the city. The president of the plaintiff association says that on January eighth the police arrested a number of the club members who were taken to the police station where they were released on bail. The next morning they were arraigned before a police magistrate in Manhattan, and the magistrate, " after listening to the arresting officer, * * * refused to entertain a complaint against the members of the association arrested and honorably discharged them, stating to the officer at the time that in his opinion there was not sufficient evidence to entertain a complaint." Why the magistrate should have " refused to entertain a complaint " is not very clear, but having refused to receive the complaint of the police or to receive evidence, his alleged opinion that there was not sufficient evidence is not as important as it might be if he had taken the complaint and proceeded with the examination as directed in the Code of Criminal Procedure. This action, or lack of action, on the part of the police magistrate is referred to several times in the plaintiff's papers as affording corroboration of plaintiff's assertion that its alleged club on Thirty-third street and the alleged members of the association are respectable and law-abiding, although what probative force this circumstance has is not apparent. The plaintiff alleges that the branch club on Atlantic avenue is also entirely respectable and law-abiding, but that the police insist on visiting the club rooms from time to time, searching the premises and annoying and harassing the club members who resort to this Atlantic avenue branch and who are all reputable business men. The police, on the contrary, say that complaints have been received that gambling is carried on at this branch establishment, that they found therein a table commonly used for a gambling game. One of the policemen makes affidavit that on January 23, 1926,

he was present at the station house in Grand avenue, Brooklyn, where a number of men were under arrest who had been taken in a raid on an alleged gambling house at 571 Atlantic avenue, Brooklyn, and that one of them, whose name is given, had been arrested on a former occasion and pleaded guilty to assault and battery for which he had been sentenced to the penitentiary for eleven months and twenty-nine days. He swears that he heard the prisoners conversing and announcing that the game was to be shifted from 571 Atlantic avenue to 592 Atlantic avenue, which is the branch club now occupied by the plaintiff, the Kalwin Business Men's Association. And the treasurer of the Berkshire Lunch Company, the owner of the building 592 Atlantic avenue, makes oath that he has not leased or let any part of the premises to the Kalwin Business Men's Association, Inc., but that the plaintiff is occupying premises leased by the owner to the " Democratic Business Club," by written lease containing a provision that the leased premises shall not be sublet without the consent of the owner. It appears from an affidavit made by one of the police inspectors that this lease was dated in December, 1925, and is signed by the " Democratic Business Club " by Frank S. Machlin, president, and Mr. Machlin's residence is given as 141 West Sixty-ninth street, Manhattan, which was a gambling house raided by the police in September, 1925, at which time Mr. Machlin was arrested and is now under indictment in New York county charged with gambling.

Now, considering all these facts, it would seem that in the exercise of a wise and legal discretion the court should not have interfered by injunction with the police in the performance of their duties, especially when it is conceded that the police commissioner is actuated by proper motives and the desire to do his duty. The learned justice at Special Term was so impressed with the defendants' honesty of purpose that, although he granted the plaintiff's motion for an injunction, he made the rather unusual direction in his opinion that the order enjoining the police should be prepared by the corporation counsel or the police commissioner, " in such form that it does not interfere with or restrain any legal or lawful right of the police," which of course is rather indefinite.

But we think this preliminary injunction should not have been granted. There is nothing new in this class of litigation. These same conflicting stories concerning the character of premises raided or attempted to be closed by the police have been before the courts before with similar fervid appeals for the protection of the citizen from unjust attack, and with citation of the Civil Rights Law and the Fourth Amendment of the United States Constitution

protecting citizens from unreasonable search and seizure. The protection of the citizen and the maintenance of his constitutional rights is one of the highest duties and privileges of the court. It is a remarkable thing that it does not appear to be necessary to cite these great fundamental principles in our courts of justice nowadays save in these cases involving gambling and disorderly houses. The courts should not allow themselves to be deceived. If there is any unlawful interference with the rights of the citizens by the police or any other public official, or where they are actuated by improper motives, the courts should be and are quick to interfere. But there are very few such cases. Injunctions against the police should not issue in doubtful cases before a trial, where the witnesses may be produced before the court and where the truth may be ascertained in an orderly way. The granting of these preliminary injunctions against the police after a hearing on affidavits does not make for efficient service by the police force or for the protection of the community against crime. In the majority of cases where these temporary orders are granted in advance of trial, that is the last that is heard of the case; it is never brought to trial. It might be better to try the case first, and this is especially so in a case like this where the good faith of the police authorities is not questioned.

In the case of *Delaney* v. *Flood* (183 N. Y. 323) the Court of Appeals through the late Judge WERNER declared the proper attitude of a court of equity towards interfering with the police in the performance of their duties. Referring to the duty imposed upon the police to preserve the public peace and to repress and restrain unlawful and disorderly conduct, the learned judge stated that the plaintiff in that case, who conducted a so-called " Raines Law Hotel," claimed that he was conducting a lawful business in a proper manner and that he was maliciously oppressed by the police. The police on the other hand denied the plaintiff's allegations, and their proof tended to show that there was basis for the suspicion that the plaintiff's " hotel " was a place where disorderly practices prevailed. Judge WERNER said (p. 327): " But we are not now concerned with the truth or falsity of these conflicting assertions. They are referred to merely for the purpose of showing that, upon the point which is determinative of the question whether the defendant acted lawfully or otherwise, there is a sharp controversy of fact. If the plaintiff did in fact maintain a disorderly place, it was the defendant's right, if it was not his duty, to warn persons about to enter against becoming participators in plaintiff's violation of the law. The whole question, whether the acts of the defendant and his inferior officers were legal or not, depends

entirely upon the character of this so-called hotel. This basic question should not be determined in a court of equity upon affidavits, but in a court of law and by evidence that is tested and scrutinized according to the settled rules. * * * The whole subject may be briefly summed up in the statement that we see nothing in the case at bar to take it out of the ordinary rule that equity will not interfere to prevent the enforcement of the criminal law. If the plaintiff has been oppressed and injured by any unlawful act of the defendant he may invoke the Penal Code (Sec. 556),* or he may have an action at law for his damages," and he cites the case of *Davis* v. *American Society for the Prevention of Cruelty to Animals* (75 N. Y. 362), where Judge EARL, writing for the court, said of actions in equity to restrain the police in the performance of their duties: " This action is absolutely without sanction in precedents or principles of equity." To the same effect are *Stevens* v. *McAdoo* (112 App. Div. 458); *Cleary* v. *McAdoo* (113 id. 178); *Eden Musee American Co., Limited,* v. *Bingham* (125 id. 780); *Shepard* v. *Bingham* (Id. 784), and four succeeding cases. In *Alexander* v. *Enright* (211 App. Div. 146) the court affirmed a judgment dismissing a complaint in an action where the plaintiff sought to restrain police interference with auction sales after sundown. Mr. Justice MARTIN, writing for the court, said (at p. 151): " The courts have always sought to aid in the enforcement of the law where there is a sincere effort to suppress crime and have refused in such cases to restrain by injunction those honestly endeavoring to improve conditions."

Each case must depend upon its own facts. In the present case we think no case was made out justifying the preliminary injunction and that the action should first be tried and determined on the merits.

It follows that the order granting plaintiff's motion for an injunction *pendente lite* should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

RICH, JAYCOX, KAPPER and LAZANSKY, JJ., concur.

Order granting plaintiff's motion for injunction *pendente lite* reversed upon the law and the facts, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

---

* Now Penal Law, § 854.— [REP.