WILLIAM RUSSO, RESPONDENT, v. VICTOR J. MILLER, MAYOR OF THE CITY OF ST. LOUIS, MISSOURI, ALLEN C. ORRICK, HENRY KORTJOHN, ARTHUR J. FREUND, FRANK MAGOON, POLICE COMMISSIONERS OF THE CITY OF ST. LOUIS, STATE OF MISSOURI, JOSEPH GERK, CHIEF OF POLICE, ROBERT KAISER, CHIEF OF DETECTIVES, AND FRANK NALLY, CAPTAIN, COMMANDING 4TH DISTRICT POLICE DISTRICT, APPELLANTS.*

St. Louis Court of Appeals. Opinion filed March 6, 1928.

*Corpus Juris-Cyc. References: Arrest, 5CJ, p. 399, n. 78; p. 404, n. 10; p. 417, n. 99; p. 418, n. 8; Injunctions, 32CJ, p. 260, n. 23; p. 261, n. 34, 35, 36, 37, 38; p. 262, n. 42; Municipal Corporations, 43CJ, p. 296, n. 40.

294

*Julius T. Muench, Oliver Senti* and *Arthur H. Bader* for appellants.

*Carl M. Dubinsky* for respondent.

BENNICK, C.—This is a suit for an injunction, instituted on September 27, 1926, by plaintiff, the proprietor of a gasoline filling station, located at the southeast corner of Seventh and O'Fallon streets, in the city of St. Louis, whereby he seeks to enjoin defendants, as officials of the police department of said city, from molesting or interfering with plaintiff, or his employees or patrons, while on or about plaintiff's said premises. From a decree in favor of plaintiff on one of the several issues in the case (to be noted more specifically hereafter), defendants, after an unavailing motion for a new trial, have duly perfected their appeal.

In his petition, plaintiff alleged, in substance, that he catered to the general public in the sale of gasoline and auto accessories, and that, in order to preserve the reputation of his place of business, to continue to serve the wants of the general public, and not to lose his investment, it was necessary that he be enabled, without interruption, to furnish his patrons the same conveniences and facilities that they had theretofore enjoyed. He further alleged that, on several specific instances, the police had entered upon his premises, and had arrested plaintiff and other persons found thereupon; and that, com-

mencing on or about September 21, 1926, a detail of police officers had been stationed on his premises, and had caused every person patronizing plaintiff's place of business to be searched, without warrant of law.

It was further pleaded that defendant Nally, captain in command of the fourth police district, acting for himself and the other defendants, had informed plaintiff that he would not be permitted to continue the operation of his business, and that every person coming upon the premises would be arrested. There was a further allegation that plaintiff's business had been conducted in a lawful and proper manner, and that the actions and conduct of the members of the police department complained of had intimidated the public, and had prevented the public from continuing their patronage of plaintiff, resulting in great and irreparable loss and damage to him.

Wherefore, plaintiff prayed that defendants and their subordinates be permanently restrained and enjoined from raiding and arresting, and from keeping officers on plaintiff's premises, and from in any way molesting, questioning, searching, or interfering with plaintiff, his employees, or patrons, while on or about plaintiff's premises.

Upon the filing of the petition, a restraining order was issued by the court (upon the giving by plaintiff of a bond in the sum of $1,000), ordering defendants to show cause why an injunction should not be granted. In due course, defendants filed their return to the order to show cause, admitting, among other things, that, prior to the filing of the suit, plaintiff and certain other persons had been arrested upon the premises, and charged with the commission of crimes; but averring that said arrests had been made because the police officers had had reasonable grounds and probable cause to believe that the persons so arrested had committed the crimes and offenses with which they were charged.

Defendants denied that police officers continually entered plaintiff's place of business whenever customers were there, and intimidated the patrons and employees thereof; but stated that police officers went upon the premises of the plaintiff only in the necessary discharge and performance of the duty imposed upon them by law to prevent crime, and arrest offenders.

Defendants further denied that plaintiff was operating his business in good faith, but stated that the gasoline filling station was maintained by him almost wholly as a convenient place wherein criminals might meet, assemble, and loiter, and store and conceal firearms and other implements with which their crimes were committed. It was further stated that plaintiff had suffered and permitted a large number of vicious, idle, and vagrant characters to assemble upon his premises; that such assembling was a menace to the peace

and quiet of the neighborhood; and that it was essential for the preservation of peace and good order that the police should, from time to time, arrest such of those persons who frequented the premises as they had reasonable grounds and probable cause to believe were guilty of the commission of crimes against the laws of the State, and of the violation of the ordinances of the city of St. Louis.

Finally, defendants averred that, by reason of the fact that plaintiff had conducted his gasoline filling station in the manner thus alleged, he did not come into court with clean hands, and was, therefore, not entitled to the relief prayed for, or to any other equitable relief.

Thereafter, the case was heard on the merits, at the conclusion of which the court decreed that the restraining order theretofore granted be dissolved; that defendants and their subordinates be permanently enjoined and restrained from keeping officers of the law on the premises of plaintiff's place of business; but that plaintiff's prayer for a permanent injunction as to all other matters contained in his petition be denied. From the injunction thus granted against them, defendants, as we have heretofore indicated, have appealed.

The evidence disclosed that plaintiff's filling station, consisting of the conventional office building and gasoline pumps, was situated on an open, unfenced lot, in full view of any one on the sidewalks bordering the same. Plaintiff is of Italian descent, and obtained the greater part of his patronage from members of his own race, residing in the immediate neighborhood of his place of business.

It appears from the testimony in the case that, for some time prior to the institution of this suit, a state of warfare had existed between rival gangs in the city of St. Louis, and that the police department had reasonable grounds for believing that a great many of plaintiff's customers, and of the habitues of his premises, were members of one of such gangs. Consequently, a determined effort to stamp out such gang activities was begun; and it was in the furtherance of such purpose, as well as upon the receipt of complaints as to specific disturbances in the neighborhood, that the searches and arrests here complained of were made. It may be conceded that in some instances the failure of the witnesses to identify any of the suspects so held precluded defendants from applying for warrants at the hands of the proper authorities. However, there was abundant evidence that many of the persons who came upon plaintiff's premises, ostensibly to purchase automobile supplies, or for other purposes, were known to be ex-convicts, criminals, gunmen, narcotic peddlers, drug addicts, and persons of manifest affluence, yet with no visible means of support.

Save for the fact that plaintiff had been arrested some two or three times, there was nothing of record against him personally, and the

activities of the police were centered upon his place of business, not so much on account of his own dealings, as because of the company he kept. However, in a couple of instances, when police officers had occasion to enter and search plaintiff's office building, revolvers were found concealed about the premises, and were taken and retained at headquarters. Plaintiff testified that one of such revolvers at least was his own property, but that he was unable to obtain it from defendant Nally, who was holding it, because he could not exhibit a certificate of title to it.

In view of the court's action in granting the injunction in the respect heretofore indicated, the evidence most material to the principal issue involved in this appeal is that respecting the keeping of a detail of police officers on plaintiff's premises. Defendants emphatically denied that any such order had ever been issued, or such practice followed; and, while it is true that plaintiff himself testified to the fact that two policemen had been stationed on his premises during the daytime for two weeks prior to the granting of the temporary injunction, the decided weight of the evidence, even from plaintiff's own case, is that the officers were not stationed on the premises, but rather that they patrolled the sidewalks around the lot, or else stood on the opposite side of the street, from either of which positions they could observe all persons entering or leaving the premises, and could question, search, or arrest such of them as they had reason to believe were guilty of the commission of crimes.

Necessarily the sole assignment of error made is that the court improperly granted an injunction restraining defendants from placing a detail of officers of the law upon plaintiff's premises. In this connection, it would be a sufficient reason for ordering the reversal of the judgment so entered merely to repeat what our statement of facts has already disclosed, namely, that it appeared from the weight of the evidence that the placing of a detail of police officers *upon the actual premises* of plaintiff's place of business had never been done nor threatened by defendants. However, the appeal has lodged the whole case with us for a trial *de novo*, thus rendering apropos a limited discussion at least in regard to the jurisdiction and power of a court of equity in a case of this general character.

As a fundamental proposition of law, a court of equity will not interfere with the exercise of the discretionary powers vested of necessity in a municipal corporation, or its officers, provided the limits of those powers are not overstepped, and absent a showing of fraud, malice, bad faith, or improper motives, for to hold otherwise would be to offend against the basic constitutional provisions dividing our system of government into three separate, distinct, and largely independent branches, by permitting the judicial branch to assume to itself the right to exercise the powers delegated expressly or by implication to the executive department. Thus, it logically follows that

police officers may not be enjoined from the performance of their *proper* duties in connection with the exercise of the general police power, and this is true even though their acts may be performed in an offensive, oppressive, or unlawful manner. [Modern Horse Shoe Club v. Stewart, 242 Mo. 421, 146 S. W. 1157; Kearney v. Laird, 164 Mo. App. 406, 144 S. W. 904; Oliver v. Orrick (Mo. App.), 288 S. W. 966; Eden Musee American Co. v. Bingham, 125 App. Div. 780, 110 N. Y. S. 210 and companion cases following; Cleary v. M'Adoo, 113 App. Div. 178, 99 N. Y. S. 60; Yankee Doodle Boys, Inc. v. McLaughlin, 127 Misc. 84, 215 N. Y. S. 257; Kalwin Business Men's Association v. McLaughlin, 216 App. Div. 6, 214 N. Y. S. 507; The Asiatic Club v. Biggy, 160 Cal. 713, 117 Pac. 912; Joyner v. Hammond, 199 Ia. 919, 200 N. W. 571; City of Louisville v. Lougher, 209 Ky. 299, 272 S. W. 748; 32 C. J. 261.]

Apart, however, from the effect to be given such underlying constitutional provisions, there is yet another and familiar reason why a court of equity is strongly reluctant to interfere with the performance of police duties, even though carried on unlawfully, and that is that the complaining citizen ordinarily has an adequate remedy at law, either by an action for damages, or by a criminal prosecution. Of course, it will not do to say that a court of equity will never take cognizance of such a situation, because, if it is shown that unlawful trespasses are continually committed under the guise of law enforcement, or that no claim is made that the law has ever been violated on the premises, or that there is nothing more than the mere suggestion of a suspicion that the law is being violated, and if, in either event, it is made to appear that the illegal acts of the police officers will result in irreparable damage to the property rights of the complainant if an injunction is not issued, then injunctive relief may be available to the injured party coming into court with clean hands. [32 C. J. 261, and cases cited.]

But such is not the case here. It is well understood that a police officer of the city of St. Louis has the right to make an arrest without a warrant, if he has reasonable grounds to suspect that the person so arrested has committed any offense. What would constitute such a reasonable and probable ground of suspicion is incapable of exact definition, beyond saying that the officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes. In other words, he must be actuated by such motives as would influence a reasonable man acting in good faith; and he must proceed upon the basis of a belief in the person's guilt, derived either from the facts or circumstances within the officer's own knowledge, or upon information imparted to him by credible and reliable third parties, provided, however, that there are no circumstances known to the officer of sufficient import

as materially to impeach the information so received. [5 C. J. 416 et seq.]

From the character of proof offered in this case, it clearly appears that defendants and their subordinates had reasonable grounds for believing that many of those persons who frequented plaintiff's establishment were perpetrators of crimes, so as to justify their arrest. We recognize the fact that the police officers should exercise their discretion wisely and calmly, and that plaintiff, or no other business man, should be required to know the pedigree of, or demand a clean bill of health from, every prospective customer. But, nevertheless, if plaintiff is so unfortunate as to have among his clientele a great number of persons whom the police have probable cause to believe to be guilty of crimes, he may not expect a court of equity to enjoin the police, in the proper exercise of their discretionary power, from causing the arrest of such persons.

It follows, therefore, that the lower court ruled properly when it denied relief to plaintiff as to all save one of the issues in the case. With regard to such sole issue—that of maintaining a detail of police officers on plaintiff's premises—we again repeat that the decided weight of the evidence is against plaintiff's contention. The most that the record shows defendants to have done was to station police officers upon the sidewalks in front of and across the street from plaintiff's filling station; and, though the effect of such order tended to establish a system of picketing and espionage of plaintiff's business, the same will not be enjoined, where it appears that the officers had reasonable grounds to believe that the law was being violated. [32 C. J. 262, and cases cited.]

Accordingly, no case having been made justifying intervention by a court of equity, the Commissioner recommends that the judgment of the circuit court be reversed, and that the cause be remanded, with directions to dismiss plaintiff's bill.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly, reversed, and the cause remanded, with directions to dismiss plaintiff's bill. *Daues, P. J., Becker* and *Nipper, JJ.,* concur.