**STATE OF MISSOURI ex rel., and to Use of Ward, v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

No. 13968.

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1950.

J. Grant Frye, Cape Girardeau, Mo., for appellant.

James A. Finch, Cape Girardeau, Mo., (James A. Finch, Jr., Lehman Finch, Freeland L. Jackson, Finch & Finch, Cape Girardeau, Mo., and James V. Conran, New Madrid, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by Donald Ward, a minor by his next friend, upon the official bond of the Sheriff of New Madrid County, Missouri, seeking to recover damages for an alleged false arrest. It was alleged in plaintiff's complaint that Robert Hartzell Kimes, the sheriff of New Madrid County, Missouri, kidnapped plaintiff, arrested him without warrant and without reasonable grounds therefor, held him in custody without authority at law, falsely accused him of crime, assaulted and beat him, threatened to throw him in the river and drown him, and kept him in custody without adequate food and water and without medical attention. It was also alleged that plaintiff received certain described permanent wounds and injuries to his head; that he was rendered sick and confined to the hospital, his general health was impaired, and that he suffered anguish of mind and was greatly humiliated and disgraced. He asked judgment in the amount of $15,000.00.

The defendant Fidelity and Deposit Company of Maryland answered, admitting the execution of the official bond for the sheriff, admitting that plaintiff was a minor, and in substance denying all other material allegations of the complaint. The principal in the bond, Robert Hartzell Kimes, Sheriff, was not named as defendant in the action as brought but on application he was

permitted to intervene and he filed answer, putting in issue the material allegations of the complaint.

Prior to trial of the action plaintiff was permitted to strike from his complaint the claim for damage with respect to humiliation and disgrace and injury to his reputation as a citizen. The action was tried to a jury. Plaintiff did not at the close of all the evidence move for a directed verdict in his favor and the jury returned a general verdict in favor of the defendant upon all the issues. From the judgment entered upon that verdict plaintiff prosecutes this appeal.

It is somewhat difficult to ascertain from plaintiff's brief just what particular rulings of the court are relied upon as erroneous because the "Points to be Argued" deal with general principles of law rather than with concrete rulings of the trial court. Thus in Point 1 it is stated that, "Under Sections 4435 and 4445 of Revised Statutes of Missouri for 1939 [Mo.R.S.A.] burglary is a felony. Under Section 3857 of such statutes, a Missouri Sheriff may arrest a person for a felony on a warrant issued by the County Magistrate; or he may arrest without a warrant if he has personal knowledge of the felony or has reliably reported facts connecting the person arrested specifically with a freshly committed felony. Otherwise the arrest and detention are illegal."

In Point 2 it is alleged that Federal Courts should follow the rules of evidence and substantive law laid down by the decisions of the Supreme Court of Missouri. In Point 3 it is alleged that the Sheriff had no facts connecting appellant with the burglary in question. In Point 4 it is said that if there were facts sufficient to authorize plaintiff's arrest and detention by the Sheriff, the court should have determined whether or not the act of the Sheriff in arresting plaintiff was based upon reasonable grounds and probable cause. The other points are also argumentative rather than specific assignments of error. As there was no motion for the direction of a verdict in favor of the plaintiff, it is impossible to determine to what specific rulings of the court these assignments have reference.

Plaintiff requested the court to instruct the jury as a matter of law that the arrest in controversy was "without any lawful reason or ground therefor." Other requested instructions went largely to the question of damages. While the record does not specifically show that these requested instructions were denied we think it may be fairly inferred that they were. At the close of the court's instructions as given, the parties were given opportunity to take their exceptions, whereupon the following occurred:

"The Court: Exceptions by the plaintiff. Do you have any?

"Mr. Frye: Yes. Plaintiff excepts for failure to charge the jury as a matter of law that the arrest itself was unjustifiable and not warranted, as being no probable cause, no specific facts connecting plaintiff at all with the burglary of the Green home, was never in possession of property.

"The Court: Anything else?

"Mr. Frye: Yes, and then, if the court won't give that instruction, we except to leaving it to the jury, on the reasonable ground for arrest. I believe the Court used something like this in the charges: that if he had—that if the sheriff had sufficient information, and a reasonable ground and acted in good faith to get evidence, that the arrest would be justifiable. We will except to that, or whatever was said in that connection, that that would give the jury a roving commission, and that the Court should hypothesize specific facts upon which the jury must pass in such finding.

"The Court: Well, have you finished that?

"Mr. Frye: Yes.

"The Court: The Judge of this court, before arguments and at the time I was commenting on instructions, indicated to counsel that he would welcome such an instruction (one hypothesizing specific facts) as counsel has now taken an exception to the failure of the Court to give and counsel did not supply the Court with any such instruction, and therefore, the Court did the

best that he could, and feels like that he followed the law.

"Mr. Frye: And the reason, your Honor, we did not submit such an instruction was that we can conceive of no fact specifically connecting the boy with the burglary, and for that reason we did not offer such."

In the absence of a motion for directed verdict the plaintiff here is confined to two classes of alleged error: (1) error in the giving or refusing to give instructions, and (2) error in the court's rulings as to the admissibility of evidence. In the final analysis the only complaint to the instructions was that the court failed to charge the jury as a matter of law that the arrest was without probable cause and unwarranted, and further that the court failed to hypothesize specific facts upon which the jury were required to pass in determining whether the arrest was without probable cause. This last contention may at once be disposed of because it appears that the court invited counsel to prepare and propose such an instruction and this counsel declined to do so that the only remaining question is whether or not the court should have instructed the jury as a matter of law that the arrest was without probable cause and unwarranted. The court instructed the jury, *inter alia,* as follows:

"Sheriff Kimes is a peace officer. He was in March, 1948, and as such is charged with the duty of aiding the enforcement of the criminal law by ferreting out and apprehending those who may commit any offenses against the criminal laws of the State of Missouri and his county; and it is his duty to the State of Missouri and his county; and it is his duty to make investigations to provide the proof of guilt of persons when a felony has been committed; and under the law in Missouri, the breaking and entering of a dwelling of another, with intent to steal, take and carry away any personal property of value therein, is burglary; and likewise, the stealing of personal property of another, of a value of more than $30.00 is grand larceny; and both burglary and grand larceny are felonies under the laws of this state. If any

peace officer—this is referring to the sheriff —has reasonable ground to believe that a felony has been committed within his jurisdiction, it is his duty, under the law, to arrest and take into custody any person he has reasonable grounds to suspect may be guilty thereof, and this he may do without a warrant or without any complaint having been filed against the person so arrested. Under the statute, when a peace officer arrests without a warrant, on the suspicion that the person arrested has committed a criminal offense, the person so arrested must be discharged within twenty hours after his arrest, unless a charge be entered against him—the person so arrested— charging a criminal offense.

"If you find and believe from the evidence in this case that on or about the 17th of March, 1948, the home of Mr. and Mrs. Homer Green, in Matthews, Missouri, was broken into, with the intent on the part of the person so breaking and entering it to steal, take and carry away any personal property of value therein; or if you find that on said date personal property of Mr. and Mrs. Homer Green of the value of $30.00 was stolen from their home, then the said Kimes, as sheriff of said county, not only had the right, but it was his duty to arrest and take into custody without a warrant any person he had reasonable ground to suspect had committed the offense. And if you find from the evidence that the defendant Kimes, as Sheriff under all the facts and circumstances shown in evidence, had reasonable ground to believe that the offense had been committed, and reasonable ground to believe that Donald Ward had committed the offense, the arrest and detention in the county jail of Donald Ward, if it was not more than twenty hours, was lawful, and such arrest and detention in the county jail under these circumstances was not a violation of his official bond, and you can not find any sum against the . defendant for the arrest of Donald Ward.

"Now, justifiable or reasonable cause for making arrests—it is not a technical term, as I have referred to it with reference to the arrest of Donald Ward. It means, did the Sheriff, Kimes, have sufficient informa-

tion at the time he made the arrest that his action was that of a reasonable, careful, and prudent person acting and conducting himself under the same or similar circumstances in good faith, and acting on a serious fact, like robbery, in the discharge of his duties as a public peace officer? If he did have such information, and if he did so act, then he had justifiable cause. If he did not have such information, and he did not so act, then he did not have reasonable cause. * * *."

■ The only pertinent Missouri statute bearing on the question of arresting the appellant without a warrant is Section 4346, Revised Statutes of Missouri, 1939, Mo. R.S.A., which provides that persons arrested and confined without warrant or other process are entitled to discharge from custody within twenty hours of the arrest unless charges be duly filed against them. The right of a peace officer to arrest without a warrant is a common law right and recognized as such by the Supreme Court of Missouri. Thus, in State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016, 1019, the Supreme Court of Missouri, after quoting from Blackstone Commentaries to the effect that in case of the commission of a felony the peace officer may upon probable suspicion arrest the felon, quotes with approval from the note to Cooley's, 1899 Edition, Vol. 2, p. 1445, as follows: *"Arrest without warrant* may be made *by an officer* where no felony has actually been committed, but suspected, and the individual is suspected of being the criminal; but a *private* person can justify the arrest only by showing the actual commission of a felony, and reasonable grounds to suspect the accused."* See, also; State v. Williams, Mo. Sup., 14 S.W.2d 434; State v. Bailey, 320 Mo. 271, 8 S.W.2d 57; State v. Raines, 339 Mo. 884, 98 S.W.2d 580; State v. Hall, 312 Mo. 425, 279 S.W. 102; Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732; State v. Gartland, 304 Mo. 87, 263 S.W. 165.

■ The common law rule with reference to the right of a peace officer to make arrest without warrant is stated by the American Law Institute as follows: "A peace officer acting within the limits of his appointment may justify an arrest made without a warrant where he reasonably suspects the commission of an act constituting a felony and that the person arrested committed it, although in fact no felony has been committed." Restatement, Torts, Sec. 121(b)

In State v. Williams, supra, the Supreme Court of Missouri said [14 S.W.2d 435]: "When an officer *arrests* without a warrant, no one would say that he must have probable cause supported by oath or affirmation of some one reduced to writing before he can go and make an arrest. The apprehension of criminals is slow enough without that formality. He is not necessarily justified because he believes an offense has been committed, but he *is* always justified if an offense in fact has been committed, whether he had reason to believe it or not. If a crime has *not* been committed, then he can only be justified by the existence of reasonable ground to believe that it has been committed. As applicable to this case it would not matter a particle, when the deputy sheriff made the arrest, whether reasonable ground to believe a felony had been committed was presented to his mind or not; he is justified *because the reasonable ground existed;* the crime had in fact been committed. That is a complete justification. The arrest was therefore lawful."

In the instant case the evidence was without dispute that the crime had been committed.

In State v. Bailey, supra, decided by the Supreme Court of Missouri, the sheriff intercepted an automobile and found it loaded with whiskey. The sheriff testified that a few minutes before he met and intercepted the automobile he received a telephone communication from a person whom he deemed reliable, advising him of the approach of the car which was loaded with whiskey. On motion to suppress the evidence the court said [320 Mo. 271, 8 S.W.2d 59]:

"This information certainly was sufficient to furnish at least reasonable ground

for suspicion that appellant was in the very act of committing a felony. * * *

"* * * If the nature of the information and the officer's knowledge of the reliability of his informant cause a reasonable suspicion in his mind that the accused is guilty of felony, he is authorized to make the arrest without a warrant. Any other rule would interfere intolerably with the administration of justice."

Defendant relies almost exclusively on the case of McKeon v. National Casualty Co., Mo.App., 270 S.W. 707, 712, but in that case there was no charge against the defendant. In the course of the opinion in the McKeon case the court said, "The evidence went no further than tending to show that insured was wanted for identification. So far as the record tends to show their suspicions were not based on fact, and therefore did not import probable cause."

In the later case, State v. Williams, supra, decided by the Supreme Court of Missouri, the McKeon case is distinguished. During the opinion in the Williams case it is said. "But an officer has a right *to arrest* without a warrant on reasonable ground to suspect that the person arrested has committed a felony. Numerous cases are in the reports where courts have considered what may be reasonable ground to suspect which authorizes arrest. This question arises usually in actions for malicious prosecution, false arrest, or false imprisonment, where the person arrested is innocent or has been acquitted. But it may arise in other cases. McKeon v. National Casualty Co., 216 Mo.App. 507, 270 S.W. 707, was an action on an accident insurance policy. The defense was that the insured was killed while resisting a lawful arrest, and therefore it was not accidental. The court held that the officer had no probable cause to arrest the deceased. There was no charge against him. It was not attempted to show that he had committed any crime. He was arrested merely because he was wanted for identification."

■ The McKeon case bears no analogy to the case at bar. Here the sheriff received a call from a responsible individual at Matthews, informing him that the home of one Homer Green had been burglarized and asking the sheriff to come to Matthews. The sheriff was reluctant to do so but the informant related various happenings and urged him to come to Matthews to investigate. His informant, Mr. Jackson Davis, accused Donald Ward of the robbery, explained that a month previous this same home was burglarized and a purse of money stolen; that Donald Ward had been seen working around the house at the time Mrs. Green was absent. The sheriff was told that money had disappeared when Donald Ward was employed at the Green home; that Ward could not account for his actions on that day; that Ward was seen coming out of the Roberts' home with a piggy bank full of coins; that Sunday School money was missing at a time Donald Ward was seen slipping into the church; that he had been questioned about the burglary at the postoffice; that Donald Ward's reputation was bad for being a common thief; that on the night of the burglary in question Ward had gone to church but had come out and was not in the church at the time the robbery was committed, although he returned thereto later; he told of the previous burglaries in the Green home, in the Roberts' home, the taking of money from the church and various burglaries of the Jackson Davis home; stated that the burglar slipped into the house while the members of the family were away. Ward was familiar with the Green home, had worked in and about the home, knew the habits of the family, had been seen going into the Roberts home when the family was away; he came out with the children's piggy bank, admitted the theft and offered to return the money; that he had been seen in and about the back part of the Jackson Davis home about the time the burglary was committed there. With these facts and knowledge of other circumstances, the sheriff took Ward into custody. The jury, on the instructions given, found that the sheriff acted on probable cause and we can not say as a matter of law that he did not so act. The court in its instructions defined reasonable and probable grounds of

suspicion following the trend of authority of the Missouri appellate courts. Thus, in Russo v. Miller, 221 Mo.App. 292, 3 S.W.2d 266, 269, it is said: " * * * What would constitute such a reasonable and probable ground of suspicion is incapable of exact definition, beyond saying that the officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes. In other words, he must be actuated by such motives as would influence a reasonable man acting in good faith; and he must proceed upon the basis of a belief in the person's guilt, derived either from the facts or circumstances within the officer's own knowledge, or upon information imparted to him by credible and reliable third parties, provided, however, that there are no circumstances known to the officer of sufficient import as materially to impeach the information so received."

▇ Other alleged errors in the instructions are argued but they are based upon no exceptions taken and as the matters were not called to the attention of the trial court they can not be considered here.

▇ We are of the view that the court committed no reversible error in its instructions.

▇ It is contended that the admission of evidence to the effect that plaintiff had the reputation of being a common thief was erroneous because his character was not in issue. It is true that plaintiff withdrew from his complaint all claim for damages because of injury to his reputation and character but it is argued that such damages were recoverable without special pleading as general damages. Oliver v. Kessler, Mo.App., 95 S.W.2d 1226; Jar-

rett v. St. Francois County Finance Co., Mo.App., 185 S.W.2d 855. Be that as it may, we are clear that the evidence was admissible on the question of probable cause for the arrest. There was no motion to confine the effect of the testimony to that issue. Certainly, the reputation of the person arrested is a proper matter for consideration by the police officer in determining whether the information which he otherwise has is credible. Stubbs v. Mulholland, Mo., 168 Mo. 47, 67 S.W. 650.

▇ Other rulings of the court on the admission of evidence are described in plaintiff's brief but on examination we find that the objections interposed were wholly insufficient as the basis for the arguments now made. It would be manifestly unfair to a trial court to reverse on rulings upon grounds never called to his attention. The objections referred to are such as, "We object to that because it is irrelevant," or "We object—it assumes it happened," or "We object as wholly irrelevant;" "We object to that as voluntary;" "I am objecting," or "It is irrelevant." These objections are insufficient to present anything for the consideration of this court on review.

▇ It is finally argued that the granting of defendant's motion to file a third party complaint was erroneous. This was clearly a matter addressed to the discretion of the trial court. General Taxicab Ass'n v. O'Shea, 71 App.D.C. 327, 109 F.2d 671. We can not see how in any event this could have been prejudicial to the plaintiff.

We have painstakingly gone through this record and are of the view that the contentions of plaintiff on this appeal are wholly without merit. The judgment appealed from is therefore affirmed.