THE STATE v. L. E. RAINES, Appellant.—98 S. W. (2d) 580.

Division Two, November 17, 1936.

*Lionel Davis* for appellant.

*Roy McKittrick*, Attorney General, and *Wm. W. Barnes*, Assistant Attorney General, for respondent.

COOLEY, C.—Appellant was convicted of burglary and larceny, his punishment being assessed by the jury at two years' imprisonment in the penitentiary for each offense. From sentence and judgment on the verdict he appeals. Originally appellant and Willie Lee Fisher (both negroes), were charged jointly. Fisher was granted a severance and appellant was tried alone. We shall refer to him as the defendant. The principal question presented on this appeal is whether or not the trial court erred in admitting certain evidence obtained by the officers in searching defendant's room at the time of his arrest. The State's evidence tended to show the following:

Mr. and Mrs. J. R. Scott operated a laundry and dry cleaning establishment at Fayette, Howard County. We shall refer to their building as the laundry. On the night of August 28, 1934, some person or persons broke into and entered the laundry through a window and stole therefrom a number of shirts and some other articles of wearing apparel, some tablecloths and pillow slips. About mid-

night that night the sheriff saw defendant and Fisher standing at the mouth of an alley (we understand the alley was near the laundry) and in an hour or so "saw them both coming up from in front of the laundry and go down the alley." He attached no significance to those occurrences at the time.

Adjacent to or within a few feet of the laundry there was a building owned by Guy T. Halley, a funeral director, used as a funeral home for negro funerals. At and for some months prior to the occurrences herein involved defendant was employed by Halley as caretaker and slept in the funeral home building. For the purposes of this case said place may be considered as defendant's then place of abode. By Halley's consent Fisher was sleeping there with defendant.

On the morning following the burglary George Dougherty, an employee at the laundry, discovered that the building had been broken into and entered through a window and that a number of articles, which he "checked up," including the shirts, had been stolen. He reported the facts to Joe Cooper, a police officer of Fayette, who made an investigation. It was discovered, among other things, and the burglar, or one of them, in making his exit through the window, had stepped into a sack of powdered soap, some of which had evidently adhered to his shoe, causing it to leave visible tracks outside. The tracks led to the back door of the funeral home.

About two weeks after the burglary a search warrant was issued and delivered to the sheriff, directing a search of the funeral home. The sheriff, Tom Gaines, accompanied by Joe Cooper, went to said place and there arrested defendant and searched his room, finding and seizing three shirts which, at the trial, were introduced in evidence over defendant's objections and were identified as property stolen from the laundry. One belonged to Dougherty, one to Bob Hancock and one to a Dr. Shaw. Other of the stolen shirts were subsequently found at Fisher's home, his mother's house, but we need consider only those found in defendant's rooms.

Before trial defendant filed a motion to quash the search warrant and suppress "all evidence seized, procured, heard, seen or learned" thereunder by the officers on the ground that the warrant was void because in violation of Section 11, Article 2 of the State Constitution, in that it did not sufficiently describe the premises to be searched and that the affidavit on which it was issued did not state facts showing probable cause for its issuance. (The search warrant itself is not set out in the record.) When the motion came up for hearing the prosecuting attorney indicated to the court that he did not propose to offer evidence that would not be admissible absent a search warrant, his contention being that the evidence he proposed to offer was rightly obtained as incident to a lawful arrest and admissible for that reason. Thereupon defendant's counsel said: "I am merely asking to quash

(suppress?) any evidence obtained under any search warrant. I suggest the court sustain the motion and quash the search warrant and suppress any evidence obtained by virtue of the search warrant.'' Without further hearing the court ruled:

''Motion to quash search warrant sustained. Evidence admissible if the warrant had not been issued will be admissible. I suppose that is a question we will have to thresh out during the trial.'' We make this detailed statement of the facts relative to the search warrant as it may help to clarify the issue to be determined as to the admissibility of the evidence obtained by the search that was made when defendant was arrested. As to that question:

When the State, at the trial, began offering evidence the defendant objected to any evidence obtained at the time and place of his arrest on the ground that it was procured by means of the search warrant, which was invalid and had been quashed. The jury was temporarily excused and in its absence the court heard evidence, before passing on the objection, to this effect: Joe Cooper testified that before the search warrant was issued he had made the investigation we have referred to, describing what he discovered thereby, and also that Dougherty had told him that he had seen defendant wearing one of his, Dougherty's, shirts which had been stolen and which Dougherty had said he recognized. Gaines, the sheriff, testified that Hancock, whose shirt had been stolen, had told him before the warrant was issued that he had seen defendant ''with his (Hancock's) shirt'' and that Dougherty also had told him later that he had seen defendant wearing his (Dougherty's) shirt, describing it and telling how he recognized it. Later in the trial, and before the jury, that testimony was, in substance, repeated, except that Gaines then said that the information given him by Dougherty was given after the issuance of the search warrant but before he made the arrest. Gaines also testified that before the arrest and after Hancock and Dougherty had told him about seeing defendant wearing their shirts, ''I asked Mr. Cooper some questions about it and we talked it over and finally went there and arrested him.'' He was not asked and did not say what Cooper told him. The testimony of both officers shows that they proceeded to the funeral home, where defendant then was; that the sheriff knocked on the door, which was opened by the defendant; that the sheriff thereupon and without any preliminary inquiry arrested defendant and then, with Cooper's aid, searched his living quarters in the funeral home and found and seized the three shirts which, at the trial, were introduced in evidence. The sheriff had no warrant for defendant's arrest, nor had any complaint been filed charging defendant with an offense. The sheriff had the search warrant in his pocket but did not produce it nor inform defendant that he had it.

Fisher, defendant's alleged accomplice, testified without objection

for the State. He testified in substance that he and the defendant, about twelve o'clock on the night of August 28, 1934, broke into and entered the laundry and stole therefrom a number of shirts and other things such as Dougherty testified were found missing the next morning. There was other corroborating evidence.

Defendant, testifying for himself, denied having had anything to do with the burglary and larceny. There was evidence pro and con as to defendant's character. It is needless further to detail the evidence. Although in his motion for new trial defendant complained that his demurrer to the evidence at the close of the case should have been sustained, that proposition is not advanced in his brief here and could not be successfully urged. The State's evidence, if true,—a question for the jury,—is clearly sufficient to sustain the verdict

As forecast in our statement the principal question in this case is as to the admissibility of the evidence obtained by the officers as a result of the search of defendant's living quarters at the time of his arrest. We exclude from consideration the search warrant as authority for the search. It was held invalid and was quashed by the court and the court indicated by its ruling that evidence not admissible absent a search warrant would not be received. The theory of the State in offering and of the court in admitting the questioned evidence was that it was obtained by a search incident to a lawful arrest. The sheriff, also, evidently acted upon that theory. He did not use or purport to use the search warrant. He first arrested the defendant and then without producing the search warrant or mentioning that he had it, proceeded to search defendant's room. The question, then, must be determined from the standpoint of an arrest without a warrant and a search, as incident thereto, without a search warrant. If the arrest was unauthorized and unlawful, the search was illegal and the evidence obtained thereby was, on the record before us, improperly admitted. It was material and if erroneously admitted the error was prejudicial to defendant. We have therefore to determine whether, under the circumstances, the arrest was lawful and, if so, whether the search was authorized as incident thereto.

In support of his contention that the search was illegal appellant cites State v. Owens, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383, and State v. Rebasti, 306 Mo. 336, 267 S. W. 858. Both cases were written by WHITE, J., as was also State v. Williams, 328 Mo. 627, 14 S. W. (2d) 434, to be presently noticed. The Owens case involved the question of a search of the person of the defendant without a search warrant and *without an arrest* and the subsequent use in the trial of the evidence thus obtained. But the court carefully pointed out that: "We are not now considering the right of an officer to search a person lawfully arrested, and take from him, to be used in evidence against him and to assist in procuring his conviction, any

article which may connect him with the commission of the crime. The right is recognized by authorities generally." [302 Mo. l. c. 356, 259 S. W. l. c. 101.] The case is not in point on the question we have before us. Neither, on the facts, is the Rebasti case, the decision of which involved a different question. In the latter case the defendant had been arrested,—it does not appear whether upon or without a warrant of arrest,—and a search warrant was subsequently issued, a search made thereunder and certain evidence thereby procured which was used at the trial. We shall not take space to analyze the opinion. As indicated above, the decision was upon a different proposition from that here involved. In the course of the opinion, however, this is said, 306 Mo. l. c. 345, 267 S. W. l. c. 860 [2]:

"No complaint is made as to the manner of the defendant's arrest: He was lawfully arrested. Being lawfully arrested, the officers had a right to search him and his possessions in the room where he was arrested, and take from him any article which might be used in securing his conviction."

In support of the above-quoted ruling the court cites numerous cases from this and other jurisdictions, among them, People v. Kalnin, 189 N. Y. Supp. 359. The Kalnin case cites and follows Smith v. Jerome et al., 93 N. Y. Supp. 202, wherein the plaintiff sought return of certain incriminating letters which had been taken from him at the time of his arrest at his residence, on a criminal charge, and his petition was denied, the court saying: "The police have power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested . . . for articles that may be used in evidence to prove the charge on which he is arrested."

In State v. Williams, supra, it is said that a peace officer may arrest without a warrant anyone who he has reasonable grounds to believe has committed a felony. To same effect see the following: State v. Cushenberry, 157 Mo. 168, 181, 56 S. W. 737; State v. Moore (Mo.), 235 S. W. 1056, 1058; State v. Gartland, 304 Mo. 87, 99, 263 S. W. 165, 169; State v. Bailey, 320 Mo. 271, 8 S. W. (2d) 57, 59; State v. Whitley (Mo.), 183 S. W. 317, 320. This rule seems to be well established.

In State v. Bailey, supra, 320 Mo. 271, 8 S. W. (2d) l. c. 59, (4) it is said:

"If the nature of the information and the officer's knowledge of the reliability of his informant cause a reasonable suspicion in his mind that the accused is guilty of felony, he is authorized to make the arrest without a warrant."

In State v. Williams, supra, the court said, 328 Mo. l. c. 630, 14 S. W. (2d) l. c. 435 (5):

"A misapprehension has arisen in this case, as well as in others, by confusing the 'probable cause' necessary to be found before the issuance of a search warrant, with the right to arrest without warrant one suspected of having committed a felony. The two things are based upon different principles and differ in their practical effect.

"The Constitution, Section 11, Article II, provides that persons shall be secure in their person, papers, etc., from unreasonable search and seizures, and 'no warrant to search . . . shall issue . . . without probable cause, supported by oath or affirmation reduced to writing.' No such condition precedes the right to arrest without a warrant."

The court then discusses the difference between the two proceedings and holds that when an officer makes an arrest for felony without a warrant, "He is not necessarily justified because he believes an offense has been committed, but he *is* always justified if an offense has in fact been committed, whether he had reason to believe it or not. If a crime has *not* been committed then he can only be justified by the existence of reasonable ground to believe that it has been committed."

■ In the instant case a felony had been committed. Of that fact there can be no doubt. The sheriff evidently knew that fact. Before arresting defendant he was informed by two men that each had seen the defendant in possession of property that had been stolen from the laundry at the time of the burglary. Cooper, the police officer who accompanied the sheriff when the arrest was made, had made investigation the morning after the burglary and had found tracks leading from the broken window of the laundry to the door of the funeral home in which defendant slept. While it does not clearly appear that Cooper communicated this information to the sheriff it can hardly be doubted that he did so. The sheriff testified that he asked Cooper some questions and talked the matter over with him before he went to arrest defendant and Cooper accompanied him on that expedition. All the circumstances considered we think the sheriff had reasonable ground to believe, or as many of the cases say, to suspect that defendant had committed the felony and was justified in arresting him. The arrest, therefore, was lawful.

■ As to the search, the rule seems to be generally followed that when a person is lawfully arrested the arresting officers may lawfully search him and the place of arrest and take from him articles of evidentiary value, as stated in the above-quoted excerpt from State v. Rebasti. At least, that seems to be the established rule in this State. After a somewhat diligent search we have found no case holding that such rule does not apply if the place of arrest happens to be the residence of the arrested person rather than some other room or place in which he is arrested. In State v. Long, 336 Mo. 630, 80

S. W. (2d) 154, the defendant was arrested in his home, on a felony charge and, as we understand the case, without a warrant. This court said, 336 Mo. l. c. 641, 80 S. W. (2d) l. c. 160 (7-8): "Appellant was arrested at his home. It was not contended that the officer did not have reasonable ground to place appellant under arrest. Therefore the officer making the arrest had the right to search appellant and the place of arrest," citing State v. Williams, supra.

The constitutional inhibition against unreasonable searches and seizures invoked by appellant, Section 11, Article II, applies to the person as well as to the home, and in the same language. The portion here pertinent reads: "That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." It is generally held that upon a lawful arrest the arresting officer may rightfully search the person of the one arrested and take from him articles of evidentiary value tending to connect him with the commission of the offense for which he is arrested. So far as concerns this constitutional inhibition, if the person of the accused may thus be searched upon a lawful arrest and as incident thereto, why, by the same logic, may not his room, when he is arrested therein, be searched, for similar reason and like purpose, even though it be his home? We hold that, since the arrest was lawful, the search of defendant's room, in which the arrest was made, the search being made after the arrest and incident thereto, was authorized; and that the articles seized, being things of evidentiary value tending to show defendant's guilt of the offense for which he was arrested, were lawfully taken and were properly admitted in evidence at the trial.

In order that we may not be misunderstood we add that we are not dealing with the question of an arrest without warrant, made without sufficient legal justification existing at the time, and a search incident thereto, the arrest being made for the primary purpose of obtaining opportunity to search,—in other words where the arrest is a mere pretext and the real purpose is to search for evidence. That sort of situation would present a different question. For a good discussion of such question see Henderson v. United States (C. C. A. Fourth Circuit), 12 Fed. (2d) 528. In that case the court recognized the rule, quoted from Agnello v. United States, 269 U. S. 20, 46 Sup. Ct. 4, that: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted," but further said, 12 Fed. (2d) l. c. 530: "But that principle has no application here, where it is evident that the search was not a mere incident of a lawful arrest but that the arrest was a mere incident of an unlawful search."

In the instant case the trial court was justified in concluding, as it evidently did, that the arrest was made in good faith, on sufficient grounds to justify it, and that the search was incident to a lawful arrest.

Appellant complains of error in the overruling of his objection to remarks of the prosecuting attorney in argument to the jury. The prosecuting attorney, in discussing the testimony of Fisher, a State's witness, and of defendant, said: "Wouldn't you prefer to take the testimony of a yellow-skin Howard County negro (Fisher) that didn't go to Kansas City, Kansas, to College?" Defendant objected because "that is outside the evidence; there is no evidence he went to Kansas City, Kansas; he said he went to Kansas City." The court overruled the objection. The defendant had testified that he had attended a college for a short time at "Kansas City" but did not say Kansas City, Kansas. If by inference or implication the prosecuting attorney's remark be understood to mean that defendant had attended college at Kansas City, Kansas, we fail to perceive how the remark could have prejudiced defendant. It is argued here that said remark was an appeal "to the well known prejudice which the people of this county feel toward a negro from Kansas." That reason was not suggested in the objection defendant offered when the remark was made. But aside from that the record is barren of evidence tending to show that such prejudice existed in Howard County and we cannot assume or take judicial notice that it did. Moreover, defendant is not a Kansas negro. He lived in Fayette. And regardless of what may be the feeling of the people of Howard County toward Kansas negroes we cannot believe that a jury of intelligent men of that county could have been prejudiced against defendant by the suggestion that he had gone to college for a short time in Kansas.

In his motion for new trial defendant charged that the court erred in failing to give an instruction defining the crime of burglary. The contention is not referred to in his assignment of errors or points and authorities in his brief here. We think the instruction given by the court sufficiently defined burglary. Defendant did not ask a more specific instruction on the subject.

There are other assignments of error in the motion for new trial which, under numerous rulings of this court construing the present statute prescribing the requisites of such motions, are too indefinite to present anything for appellate review. We find no reversible error in the record. The judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.