STATE of Missouri, Respondent,

v.

Albert Lonzo CANTRELL, Appellant.

No. 46361.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Albert L. Cantrell, appellant, in pro. per.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

STORCKMAN, Presiding Judge.

The defendant was found guilty of burglary in the second degree and larceny and his punishment assessed at imprisonment in the penitentiary for a term of three years for the burglary and for an additional term of three years for the larceny. His motion for a directed verdict of acquittal or for a new trial was overruled, allocution was granted, and the Court rendered judgment and pronounced sentence in accordance with the verdict of the jury. The defendant appealed to this court from the judgment and sentence entered.

On the evening of September 8, 1956, between 6:30 and 9:00 p. m., while the owners were away, the dwelling house of William Lamar and Lou C. Lamar in Platte County, Missouri, was entered by forceably removing a window screen and certain personal property was stolen. Later that night, at about 1:45 a. m. on September 9, the defendant and a companion, Marvin Maertens, were arrested on a public street of Kansas City, Missouri, by members of the police department of that city. From the automobile in which defendant and Maertens were riding the police officers recovered a Felca wrist watch which was later identified as having been stolen from the Lamar home. At the police station the police of-

ficers found a rent receipt among the personal effects surrendered by the defendant. The receipt was issued to "Al Harris" and was for rent of an apartment at 738 Washington Boulevard, Kansas City, Kansas.

Later that day police officers from the Kansas City, Missouri, and the Kansas City, Kansas, police departments went to the apartment, accompanied by the owner of the building. They were admitted to the apartment by Arlene Williams, its only occupant, and there they found a television set, a coffee maker and a toaster which were later identified as having been stolen from the Lamar home. Thereafter Mrs. Lamar went to the apartment with police officers where she identified salt and pepper shakers and an ash tray also taken at the time of the burglary. All of the items so recovered were returned to Mr. and Mrs. Lamar.

Before the trial on April 22, 1957, the defendant filed his motion to suppress "all evidence taken from his person, his car, and his home in Kansas"; the rent receipt was the only item specifically mentioned. Evidence was heard and the motion was overruled. Some further objections were made during the trial. The Felca wrist watch and the rent receipt were introduced in evidence. The television set, the coffee maker, the toaster, the salt and pepper shakers and the ash tray were not produced at the trial, but were referred to during the testimony.

■ Defendant's brief on appeal presents one question for review. He contends the trial court erred in overruling his motion to suppress the evidence and in admitting the evidence because his arrest was unlawful and the search of the automobile, his person and his home, and the seizure of the rent receipt and other articles, were in violation of rights guaranteed by Art. I, § 15, Constitution of Missouri 1945, V.A.M.S. and the Fourth Amendment to the Constitution of the United States of America. This is the principal ground of the motion for a new trial. The other assignments

of error in the motion for new trial, not being presented in the appellate brief, are deemed waived or abandoned. 42 V.A. M.S. Supreme Court Rule 28.02; State v. Ash, Mo., 286 S.W.2d 808, 813 [15].

■ The Fourth Amendment to the Constitution of the United States applies only to the federal government, its officers and agents. Watson v. United States, 5 Cir., 224 F.2d 910, 913 [5]; Williams v. United States, 9 Cir., 215 F.2d 695, 696 [2]. It has no application to the facts of this case, involving, as it does, state officers only.

■ In determining the issue of the lawfulness of defendant's arrest, the evidence will be viewed in the light most favorable to the state. State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016, 1018 [3]. The state's evidence tended to prove that Gary Waite, a member of the Kansas City, Missouri, police department, in a patrol car, first observed the defendant and Maertens in an automobile being driven by the defendant on Troost between 29th and 30th streets. The automobile stopped and the two men looked about them. The automobile moved ahead about a quarter of a block, stopped, the men again looked around, and the automobile then moved slowly ahead. At this point Officer Waite called for assistance and Officer Niels Jensen responded. The two officers halted the automobile and, while checking defendant's driver's license, noticed a 30-30 rifle laying in plain view on the back seat of the automobile together with a box of shells. Asked about the rifle, the defendant said he had been deer hunting in Idaho. The defendant gave the officers permission to examine the rifle and they found it to be loaded. The defendant and Maertens were then placed under arrest. In the meantime, while Officer Jensen was interrogating him, Maertens opened the glove compartment of the automobile and exposed the Felca wrist watch. After the men were arrested and before the automobile was towed away, it was searched and the Felca wrist watch was among the articles taken from it. The de-

fendant and Maertens were then taken to the police station where they were "booked for investigation."

Among the duties and responsibilities imposed upon police commissioners of Kansas City by § 84.420 RSMo 1949, V.A.M.S., as amended, Laws of Missouri, 1953, p. 304, are these: "(1) To preserve the public peace; (2) Prevent crime and arrest offenders; (3) Protect the rights of persons and property." A similar provision applicable to the City of St. Louis is § 84.090. Section 84.440, also pertaining to Kansas City, provides: "In case any police official shall have reason to believe that any person has committed, or is about to commit within the city * * * any breach of peace or violation of law and order, or that any person found within the city * * * is charged with the commission of crime in the state of Missouri, against whom criminal proceedings shall have been issued, * * * said police official may cause such person to be arrested by any member of the police force." Section 544.170 provides: "All persons arrested and confined * * * by any peace officer, without warrant or other process, for any alleged breach of the peace or other criminal offense, *or on suspicion thereof*, shall be discharged from said custody within twenty hours from the time of such arrest, unless they shall be charged with a criminal offense * * *." (Emphasis supplied.)

■ The authority, conferred by statute upon police officers in Kansas City and certain other cities, to arrest offenders without a warrant, is not restricted to any particular class of offenders or grade of crime, but applies alike to misdemeanors and felonies, where the police officers have reasonable grounds of suspicion although the offense is not committed in their presence. Secs. 84.420 and 84.440; State v. Grant, 76 Mo. 236, 244; Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 80 S.W.2d 228, 236 [5]. See also § 84.090; State v. Humphrey, 358 Mo. 904, 217

S.W.2d 551, 553; Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68, 70 [6]; City of St. Louis v. Simon, Mo.App., 223 S.W.2d 864, 865 [1]; City of St. Louis v. Gavin, Mo.App., 222 S.W.2d 536, 539 [4]; Russo v. Miller, 221 Mo.App. 292, 3 S.W.2d 266, 269 [5].

■ A member of the police force of Kansas City is not limited to making arrests for violations of city ordinances, but has the same power to make arrests for crimes or offenses committed against the state as a sheriff or other peace officer. State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016, 1018 [5].

■ What constitutes "a reasonable and probable ground of suspicion is incapable of exact definition, beyond saying that the officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes. In other words, he must be actuated by such motives as would influence a reasonable man acting in good faith; * * *." Russo v. Miller, 221 Mo.App. 292, 3 S.W.2d 266, 269 [6]. See also State v. Grant, 76 Mo. 236, 246, and 6 C.J.S. Arrest § 6 d (1), p. 596. Judged by these standards, we cannot say that the police officers acted arbitrarily or unreasonably. The time and place, the suspicious actions of the defendant and his companion, and the loaded rifle of large caliber on the seat within easy reach, are all circumstances tending to justify the arrest.

State v. Whitley, Mo., 183 S.W. 317, 320 [4], holds that a police officer "may arrest upon suspicion any person who is in fact guilty of a recent felony, whether the officer be advised of such felony or not." To the same effect State v. Williams, 328 Mo. 627, 14 S.W.2d 434, 435–436, states that an officer "is not necessarily justified because he believes an offense has been committed, but he *is* always justified if an offense in fact has been committed, whether he had reason to believe it or not." See also State v. Raines,

339 Mo. 884, 98 S.W.2d 580, 584 [4]. In addition to the grounds for reasonable suspicion existing in this case, an offense had in fact been committed and the defendant was charged with its commission. The contention that the arrest was unlawful is overruled.

■ When a person has been lawfully arrested, the officers may take from him articles of evidentiary value without violation of the constitutional guaranty against unreasonable searches and seizures. State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584 [6]; 79 C.J.S. Searches and Seizures § 26, p. 795. The officers may also lawfully search the motor vehicle in which the arrested person was riding, State v. Williams, 328 Mo. 627, 14 S.W.2d 434, 435 [4]. The wrist watch and the rent receipt were lawfully seized and properly used in evidence.

As previously noted, the rent receipt was not in defendant's own name. Before going to the apartment, the officers talked to the defendant and he denied living there. In fact, he claimed he was getting ready to leave the city and had no place of residence. At the hearing on the motion to suppress, the defendant claimed the apartment as his residence. The apartment was rented for one week and, according to defendant's own testimony, was occupied by the defendant, Maertens and Arlene Williams who was "living with" Maertens, although not married to him. The officers and the apartment owner were invited in, or at least admitted without objection, by Arlene Williams, who was the sole occupant of the apartment which contained some of her own property. The remainder of the loot was found in the apartment, but it is not clear from the record what sort of search, if any, was required.

■ Since the defendant disclaimed any interest in the premises searched, he cannot be heard to question the legality of the search and seizure. 79 C.J.S. Searches and Seizures § 60, p. 816; State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1033 [4]. His disclaimer, once made, cannot be recalled when it suits his purpose to do so.

■ In this state of the evidence, the Court might have properly found that the aparment was the residence and in the possession of Arlene Williams alone or in company with Marvin Maertens. The constitutional guaranty against unreasonable search and seizure is a personal one and affords no protection from search to a person who is not the owner of or in possession of the premises. State v. Askew, 331 Mo. 684, 56 S.W.2d 52, 54 [5]; State v. Green, Mo., 292 S.W.2d 283, 286 [1]. We need not discuss other possible grounds justifying the removal of the articles from the apartment. It is clear, under the circumstances, that the defendant's constitutional guaranties were not violated.

This case is readily distinguishable from State v. Cuezze, Mo., 249 S.W.2d 373, and State v. Jones, 358 Mo. 398, 214 S.W.2d 705, relied on by the defendant. In the Cuezze case the defendant's arrest was held to be unlawful and the search and seizure were made without a warrant. The chief distinguishing feature of the Jones case is that it involved the statute which prohibits a member of the highway patrol from seizing any property except weapons without a search warrant. In the case at bar, the arrest of the defendant was lawful and the searches and seizures were justified as an incident of the arrest.

The Court did not err in overruling the motion to suppress the evidence. Accordingly, the judgment is affirmed.

EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.