STATE of Missouri, Respondent,

v.

Henry Allen REDDING, Appellant.

No. 49066.

Supreme Court of Missouri,

Division No. 2.

May 14, 1962.

Morton D. Baron, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Theodore C. Beckett, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

■ Defendant was found guilty by a jury of first degree robbery by means of a dangerous and deadly weapon; upon a finding by the court of a prior conviction of a felony, he was sentenced to a term of twenty years in the penitentiary. On this appeal we consider the assignments of a detailed motion for new trial, in so far as those assignments are sufficient under Rule 27.20, V.A.M.R. We have so frequently quoted insufficient assignments, with citations in support of our rulings, that we do not propose to encumber this opinion with such quotations or citations. The assignments not specifically referred to herein are denied for insufficiency.

The evidence for the State fairly showed the facts now recited. John Leuther owned and operated a market at the corner of 39th and Shenandoah in the City of St. Louis known as the "Tom Boy Market." On Friday evening, December 9, 1960, he and his grocery manager, Agnes Shadley, closed the place at about 8:00 p. m., locked the front door as they departed through it, and proceeded together along the 39th Street side of the building until they reached the west side of a parking lot in the rear. There they separated, Agnes walking on south to her car, while Leuther entered the parking lot and walked east to his car parked near the southeast corner. The lot was well illuminated by a large light. As he approached his car he heard footsteps behind him, so he got in his car rather quickly and shut and locked the door. Immediately a man appeared at the window (later identified as Roy Russell Cook, indicted with this defendant), pointed a .45 caliber revolver at Leuther and said: "You

are a wise son-of-a-bitch, aren't you? I am going to kill you." After this initial greeting, and other remarks in similar vein, he instructed Leuther to hand him his pocketbook and get out on the other side; Leuther complied, and as he did so, another man, positively identified at the trial and previously as the defendant Henry Allen Redding, came up carrying a .45 caliber automatic pistol which he kept continuously pointed at Leuther. Cook then went through Leuther's clothes, took everything but his car keys, and then ordered him back to the store. The two men then conducted Leuther back to the store where they required him to open the front door and then lock it behind them; inside, they forced him to unlock the safe; at this point the defendant, with the pistol and at Cook's direction, took Leuther to the back of the store, where they waited. Cook soon appeared with the contents of the safe in four canvas bank bags, and together they took Leuther into the meat cutting room, where the defendant continued to hold his pistol "on me." At that point Cook again threatened to kill the victim and cocked and uncocked his revolver several times while held at his "belly"; defendant, according to Leuther, protested the idea of killing him. Finally they tied Leuther to the door of the cooler and left through the back door of the market. Leuther eventually freed himself, went to a nearby store and had the police called. The evidence showed that $7,820.75 was taken, of which about $620 was in checks and the balance in cash. Two thousand dollars of the money was in new ten-dollar bills, and another $2,000 in used ten-dollar bills, all of which had just been procured from the bank. Approximately $150 was taken from Leuther's billfold. The men also took four books of American Express money order forms from the safe; the market was a substation for the sale of money orders. The men wore no masks, and Leuther testified that he had ample opportunity to look at the defendant.

Defendant was arrested in his apartment or "flat" at about 8:45 p. m. on December 13, four days after the robbery. At that time the officers found and took a loaded .45 caliber revolver, a loaded .45 automatic pistol, extra ammunition, $400 in ten-dollar bills (of which 21 were new with consecutive serial numbers) and four books of blank American Express money order forms. These things were all marked by the officers at the time and produced at the trial. The details of the arrest will be considered further a little later.

Defendant took the stand and testified that he was in East St. Louis gambling at the time of the robbery; and that he won $500–$600, thus accounting for the money found. He also testified that he had bought the two guns at about 6:00 o'clock on a morning two or three days after the robbery, on the street at Sixth and Market from a man whom he had never seen before; he further testified that the books of money order blanks were later found by him in the paper sack in which the guns were delivered to him. He denied the robbery. He admitted a previous conviction for statutory rape, a sentence of three years and the serving of the term in the Algoa Intermediate Reformatory.

Defendant's counsel filed a motion to suppress evidence of the property found in his apartment. Our discussion of the question so raised will also dispose of the same question raised at the trial and in the claim of error in permitting the officers to testify to what they found in the apartment. At the hearing before trial evidence was introduced showing, in substance: that the officers who made the arrest had been assigned to the investigation of this robbery; they had heard the radio report of the robbery and had read the written police report, both of which included descriptions of the robbers, and they had noted that one description fitted this defendant; they had seen defendant and Cook driving around the neighborhood at various times of the

day and night, and had noted they were apparently not working; they had learned that after the time of the robbery defendant had traded his car in on a newer one and paid $400 in cash in new ten-dollar bills; on the evening of the arrest they had seen him carrying a TV set out of a store and loading it·in the trunk of his car; an informer had told two of these officers, after the robbery, that Cook and Redding were spending a lot of money, had bought a car, clothes and luggage, had showed a handful of ten-dollar bills, and that there were money orders at defendant's home. On the evening of December 13, 1960, two of these officers who were on duty called the third who was off duty, and told him that with the information they had they thought they should make the arrest, whereupon this officer met the other two; one of the three testified that the calling officer added that they should make the arrest "before we lose the evidence." The officers proceeded to the rear door of defendant's apartment and knocked; a man said "Who's there," and one of the officers answered— "police officers." There were brief remarks about defendant's car in the alley, defendant came to the door and opened it, and the officers entered the kitchen; two of the officers were in uniform. One of them immediately told defendant that he was under arrest for the robbery of the Tom Boy Market; he replied, in effect, that they were crazy. The officers searched him for weapons, handcuffed him and then one of the officers told him that they were going to search the house; he replied,—"Go ahead, I have nothing to hide." In a large, open closet opening off the kitchen, the officers found the four books of money order blanks in the top drawer of a chest of drawers; in the pockets of defendant's overcoat they found the two loaded guns; and in a woman's coat they found the forty ten-dollar bills. In the kitchen cabinet they found additional ammunition for the automatic.

■ Defendant complains here that the arrest was delayed so that evidence might be seized, and that the search extended beyond the room in which the arrest was made; also, that there were no "proper grounds" for the arrest. Admittedly, there was no warrant for the arrest or the search. Defendant has pleaded § 15 of Article 1 of the Missouri Constitution, V.A. M.S. and the 14th Amendment to the United States Constitution. We rule, first, that the arrest was lawful. The mere recital of the information which these officers had is sufficient to show that they had reasonable cause to suspect that defendant was guilty of a felony,—namely, this specific robbery. See, generally, State v. Cantrell, Mo., 310 S.W.2d 866; State v. Edwards, Mo., 317 S.W.2d 441; State v. Raines, 339 Mo. 884, 98 S.W.2d 580. Having such, they were entitled to arrest him. Edwards, supra; State v. Bailey, 320 Mo. 271, 8 S.W.2d 57; City of St. Louis v. Washington, Mo.App., 223 S.W.2d 858;· State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551. The officers also had the right to determine, in the fair exercise of their discretion, the time and place of the arrest. The mere fact that they had seen him on the street with the television set some half hour earlier, and that they could, presumably, have arrested him then, is in no way controlling. Nothing was shown here to indicate such an arbitrary exercise of power as to make the arrest invalid.

■■ As an incident to a lawful arrest, officers have the right to make a search and to take articles which have evidentiary value in connection with the crime for which the suspect is arrested. State v. Turner, 302 Mo. 660, 259 S.W. 427; State v. Raines, 339 Mo. 884, 98 S.W. 2d 580; State v. Cantrell, Mo., 310 S.W.2d 866; State v. Edwards, Mo., 317 S.W.2d 441; State v. Wright, 336 Mo. 135, 77 S.W. 2d 459. The right to search applies to a car in which a suspect is or has been riding (Edwards, Cantrell, supra), the house in which he is arrested (Wright, supra) or the premises (Turner, supra); one opinion uses the word "room" (State v. Rebasti, 306 Mo. 336, 267 S.W. 858, 860), and

another (Raines, supra) "the place of arrest." In some circumstances a room constitutes the extent of one's residence. Certainly the search of a closet opening off of the very room in a residence in which the suspect is arrested is not unreasonable, and we so rule. It is unnecessary to rule the State's claim that defendant waived this contention by consenting to the search. The preponderance of the evidence indicates that the officers told defendant that they were going to make a search before he said "Go ahead." We do note that under the circumstances there was hardly a completely voluntary consent. State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383. The articles taken in the search were not inadmissible for the reasons assigned, nor was the testimony of the officers. It is likely that defendant by testifying to and attempting to explain his possession of the money, the pistols, and the money order blanks waived the right to insist upon the illegality of the search (State v. Smith, 357 Mo. 467, 209 S.W.2d 138), but we prefer to base our ruling upon the ground that the search was legal in its inception.

■■ Defendant complains of the refusal of the court to require one of the officers to state the name of the police informer from whom they received information. This was a matter resting largely in the discretion of the trial court, as recently ruled in State v. Edwards, Mo., 317 S.W.2d 441. There was no contention here that the informer had participated in the robbery, and there was no error in the ruling.

■■ Complaint is also made that defendant was not given twenty peremptory challenges to the jury panel instead of twelve, because he was charged with an offense "which is punishable by the death penalty, V.A.M.S. 560.135." Section 546.-180, subd. 2(1) (a) RSMo 1959, V.A.M.S.[1] (applicable to cities of over 100,000) provides: "If the offense charged is punishable with death, or by imprisonment in the penitentiary not less than for life, to the number of twenty, and no more; * * *." Here the State expressly waived the death penalty during the voir dire, as it may legally do. State v. Garrett, Mo., 282 S.W.2d 441. This defendant could only have received a sentence of from five years to life. Moreover the subsection just quoted would appear to be applicable only where the jury has a choice between death and a sentence not less than life, which was not even true here initially.

■ It is suggested that the sentence imposed by the court here under the Prior Conviction Act, now § 556.280, was improper because defendant had merely served a sentence in the Algoa Reformatory, and because the copy of the record produced did not bear the seal of that institution. The prior conviction was for statutory rape, an offense specifically *punishable* by confinement in the penitentiary, § 559.260. It is only necessary that the prior offense be so punishable. This point has been specifically ruled in State v. Nolan, Mo., 316 S.W.2d 630, with reference to Algoa. In fact, the statute applies even if the former sentence was served in a city workhouse, if the offense could have been punished by confinement in the penitentiary. State v. Foster, Mo., 251 S.W.2d 675. Since 1957 commitments are made to the Department of Corrections, § 216.208, which Department then determines the place of confinement. If more were needed, which it is not, the record book identified by a Deputy Circuit Clerk showed that Redding was sentenced on the prior conviction to confinement "in the penitentiary" for a period of three years. A copy of the record from Algoa was offered to show the confinement and discharge. The complaint that the document bore no "seal of the institution" is too trivial to deserve serious notice. We doubt that Algoa has a seal. The authenticity of the record was verified by the *affidavit* of Ray F. French, Superintendent.

---

1. All statutory citations will be to that revision.

That was certainly sufficient. Various cases hold that such records may be certified by the warden of the appropriate institution. State v. Burns, Mo., 328 S.W.2d 711; State v. Garrison, Mo., 305 S.W.2d 447; State v. Peterson, Mo., 305 S.W.2d 695; State v. Romprey, Mo., 339 S.W.2d 746. An affidavit could hardly be of less effect than a certificate. In any event no prejudice could have resulted to defendant here for he admitted in his testimony the prior conviction, sentence and confinement.

■ The contention that photographs of the premises were improperly admitted because taken under different conditions is denied. The contention is obviously based on the fact that the photographs were improper because they were taken in daylight. Such objections merely go to the weight of the evidence and any differences in conditions may be developed in the evidence. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 107; State v. Johnson, Mo., 286 S.W.2d 787, 791–792. On relevancy, generally, despite the existence of oral descriptions, plats, etc., see State v. Brown, Mo., 312 S.W.2d 818, 821–822; State v. King, Mo., 334 S.W.2d 34.

■ Claim of error is also made in that Mr. Leuther was allegedly not "qualified" to testify that the revolver and pistol produced were the "same guns," and that his evidence was hearsay and without proper foundation. Leuther had an opportunity to observe the guns over a rather considerable and important period of time. There is no question of hearsay. He said as to Cook's revolver: "It's the same gun that Cook held on me all the time." As to the automatic he said: "That's * * * the one that Redding carried. It's the same gun." Then, on a question by the State's attorney asking if the latter was the same "type" of gun, he said "Yes." This question and answer did not destroy the effect of his positive identification. The weight of this evidence and the "qualification" of the witness (if such a question there be)

were for the jury. The testimony was admissible and it was certainly sufficient to render the exhibits admissible. Less identification than this has been held sufficient. State v. Johnson, Mo., 286 S.W. 2d 787, 791. See also State v. Pruett, Mo., 342 S.W.2d 943.

■ During the cross-examination of Mr. Leuther counsel moved for the production of any statements taken by the police from him. This request was denied, the prosecutor stating that he had no statement which he intended to introduce in evidence, and that any such statements would be confidential. Error is assigned in that defendant was thus supposedly deprived of the full right of cross-examination. We are unable to tell from the motion for new trial or the oral request whether reliance was placed on § 510.030 appearing in our Civil Procedure, or on Criminal Rule 25.19. The latter presupposes the issuance of a subpoena duces tecum, and none was shown here. In State v. Kelton, Mo., 299 S.W.2d 493, the court said, loc. cit. 497: "Assuming, without deciding, that defendant would have the benefit of Section 510.-030 RSMo 1949, V.A.M.S., pertaining to the production of documents and papers in civil cases, she did not bring herself within the terms of the statute. The application was oral and there is no showing that the written statement contained evidence material to the merits or defense of the action. 'A mere suspicion that it contains such evidence does not warrant an order for its production.' State ex rel. Page v. Terte, 324 Mo. 925, 25 S.W.2d 459, 462[2, 3]. The production of books and papers under the statute 'is not authorized upon the possibility of the impeachment of witnesses or for prying into an adversary's preparation for trial.' State v. McDonald, 342 Mo. 998, 119 S.W.2d 286, 289[6]." See also State v. Brown, 360 Mo. 104, 227 S.W.2d 646. And a somewhat analogous situation was discussed very recently in State v. Crayton, Mo., 354 S.W. 2d 834.

Edward Kelly, a special agent of the American Express Company, identified certain original "trust receipts" of that Company which showed the delivery to Leuther's Market (as a sub-agent) of the specific books of money order blanks found in defendant's apartment, and later produced at the trial. Defendant's counsel objected to Mr. Kelly's qualifications and the objection of hearsay has been preserved in the motion for a new trial. From Kelly's testimony it may reasonably be inferred that the investigation by his company of the stolen money order blanks had been assigned to him. He testified: that he was required to be familiar with all phases of the business, and that he was an "inspector of everything that happens in the particular office * * *"; that the Tom Boy Market was a sub-agency; that when money orders were delivered to such an agency receipts were taken, identifying the particular money orders; that the exhibits in question were such "trust receipts," and that each receipt here bore the agency number 958. The police returned the stolen books to Kelly. This witness also identified the books themselves, but these were specifically identified by one of the officers and Kelly's identification could only have been cumulative. Our statute, § 490.680, provides for the identification of such records by "the custodian or other qualified witness," and by its very terms leaves considerable discretion in the trial court regarding the qualifications of the witness and "the sources of information." Rossomanno v. Laclede Cab Co., Mo., 328 S.W. 2d 677. And "to construe the act too strictly would be to repeal it." Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W. 2d 663, 666, 55 A.L.R.2d 1022. This witness was familiar with the procedure used concerning these receipts, he produced the original records, and he was presumably in charge of this particular investigation which necessitated his familiarity with the records. It has been said that slight evidence is required other than "the presumption of regularity that arises from a showing" of the document's source. Hermann v. St. Louis Public Service Co., Mo.App., 345 S.W.2d 399, 405. There was no error in admitting Mr. Kelly's testimony or the receipts and books.

The only assignment regarding instructions which could possibly be considered as specific within our rule is the one addressed to the State's Instruction No. 1. This very generally followed the wording of the indictment and required the jury to find that defendant "by means of a dangerous and deadly weapon," a pistol, feloniously made an assault upon Leuther, put him in fear of "immediate injury to his person," and by force and violence took $7,323 in money and $700 in checks, "all of the money, goods and property of the said John Leuther" from his person, in his presence and against his will, with force and violence and did feloniously rob, steal and carry away the property with the felonious intent to deprive the owner thereof. This instruction is said to be confusing and difficult to follow, with the elements of the crime not "spelled out." The language is somewhat antiquated, but the instruction contains all the elements of the crime charged (§ 560.135) and the jury could not well have been misled. Similar instructions were approved in State v. Baldwin, Mo., 281 S.W. 940, and State v. Newland, Mo., 285 S.W. 400, and the form, generally, is often used. We are hopeful that within the foreseeable future the forms of criminal instructions may be simplified, but we find no prejudicial error here. It is also said that the value of the property taken was slightly less than the total amount stated in the instruction. This is immaterial, State v. Gabriel, 342 Mo. 519, 116 S.W.2d 75, for in a robbery prosecution it is not even necessary to prove the exact value of the property taken. The contention that the phrase "all of the money, goods * * * of * * * Leuther" was prejudicial as indicating that this was all the money he had is without foundation.

The assignment that the motions for a judgment of acquittal should have

been sustained is completely refuted by the mere recital of the State's evidence.

■ A point is made on the State's closing argument. Mr. Leuther had testified that he saw certain policemen "dust around the safe and cooler door" for fingerprints, but that he did not know whether they found any. Only one brief excerpt from all the arguments is set out in the transcript. It is as follows: " * * * Now, as to testimony that there were no fingerprints: and why? That is what is known as negative evidence. And Mr. Baron would have objected to it had—

"MR. BARON: Objection, Your Honor. He is talking about testimony that would have been, and said I would have objected to it. I might have welcomed it.

"THE COURT: Overruled. ·

"MR. BANTLE: That is what is called negative evidence, and that we aren't permitted to produce. Consequently, it wasn't a matter that could have been testified to by anybody. If I had been able to produce such evidence, I would have been happy to produce it for you." It seems probable that these remarks were retaliatory and directly related to some argument made by defendant's counsel: If so, they would not constitute error. But, in any event, the remarks could not have been prejudicial. With all the direct evidence produced here, the question of fingerprints was more or less of a "red herring," and the jury could hardly have thought otherwise.

■ The fact that the verdict found defendant guilty as charged "on information," instead of on indictment, was wholly immaterial and in no way impaired the validity of the verdict. State v. Taylor, 261 Mo. 210, 168 S.W. 1191, 1195; State v. McBride, Mo., 231 S.W. 592, 594.

We find no prejudicial error in those parts of the record which we examine independently of a motion for new trial under Rule 28.02. The judgment is affirmed.

All of the Judges concur.