STATE of Missouri, Respondent,

v.

Herbert PHELPS, Appellant.

No. 50372.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Thomas F. Eagleton, Atty. Gen., Thomas E. Eichhorst, Asst. Atty. Gen., Jefferson City, for respondent.

Gene A. DeLeve, Kansas City, for appellant.

HENLEY, Judge.

By an amended information alleging that defendant had previously been convicted of burglary in the second degree and stealing and thereafter sentenced therefor to two years in the penitentiary on each conviction to run concurrently and paroled (Section 556.280), the defendant was charged with robbery in the first degree by means of a dangerous and deadly weapon. Section 560.120. Prior to trial day, evidence was heard on defendant's motion to suppress the use in evidence of articles described in the information, and other articles, and to suppress the testimony of certain police officers and any information gained by them in a search of his person and the seizure of said articles, which motion was overruled. His trial by a jury resulted in a verdict of guilty as charged. The trial court heard evidence of the prior convictions in July, 1961, in the Circuit Court of Jackson County, Missouri, but did not make a finding of record that defendant had prior thereto been convicted, sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor. The court assessed his punishment and sentenced him to serve fifteen years in the Department of Corrections. Defendant

was represented at the trial by able counsel appointed by the court. His trial counsel indicated an interest in prosecuting defendant's appeal and, with defendant's approval, was reappointed by the trial court for that purpose. On defendant's motion, he was permitted to appeal in forma pauperis and a transcript was furnished at the expense of the State. Defendant's motion for new trial was overruled and he appeals.

The first assignment of error is that the court erred in overruling his motion to suppress the use in evidence of a .32 caliber revolver and three .32 caliber shells seized from his person for the reason that the search of his person and the seizure of the articles constituted an unlawful search and seizure and violated his rights preserved by § 15, Article I of the Constitution of Missouri, V.A.M.S., and that the use of said articles as evidence would compel defendant to testify against himself in violation of Section 19, Article I of the Constitution of Missouri. Included within this assignment is the further contention that the court erred in overruling his motion to also suppress the testimony of police officers relating to the search, the articles seized, and the place and circumstances under which the search and seizure was made for the same reasons stated above.

The evidence heard by the court on defendant's motion to suppress was substantially as follows and would warrant the court finding: In the process of investigating an armed robbery that occurred at about the noon hour on January 21, 1963 on the west side of Troost Avenue in the area of 31st and Troost in Kansas City, Missouri, and in an effort to apprehend those guilty of that offense, Captain Mark Ruckel and Detectives Fred Hauser, Sidney Harlow, and Carl Halteman of the Kansas City Police Department went to Apartment 203 at 3125 Tracy occupied by Frank Gibson and his wife and children as tenants at about 5 o'clock p. m. that day. Earlier that day and before the noon hour Della McCollum, manager and janitor of this apartment

building, had reported to the police department that on the evening before she had seen Frank Gibson, and another man about Gibson's height whom she did not recognize, in a new Ford Galaxie parked in her back yard; that she knew Gibson did not own a car; that she took down the license number of the car and then she observed Gibson change the numeral "4" on the license plate to look like a "1", and furnished the police with the license number. This witness also testified that she knew the defendant and in reply to a question by defendant's counsel as to whether defendant was the man with Gibson in the Ford the evening before she said, "I would say it was not him [defendant]." She further testified that defendant was not a tenant of the apartment building, that "he just visited there." After the noon hour the police department received a report of the armed robbery of J. Winston Thompson in the area of 31st and Troost at or during the noon hour by two young white men, one of whom had held up Mr. Thompson on the sidewalk while the other remained in an automobile close by. The hold-up men had escaped from the scene in a late model Ford meeting the description and having the license number furnished that morning by Della McCollum.

With this information and knowledge and a general description of the hold-up men the four officers went to 3125 Tracy to interrogate and probably arrest Frank Gibson and another man for the robbery of Mr. Thompson. On arrival Captain Ruckel and Detective Harlow went in the building, and Detectives Hauser and Halteman remained outside for a few minutes. Before going upstairs to the Gibson apartment, the Captain and Harlow first talked with Della McCollum who described to them the floor plan of the Gibson apartment on the second floor and the location of a clothes closet of that apartment across the hall from the Gibson bathroom.

The Captain and Harlow then went to the Gibson apartment where, after identifying themselves, they were admitted to the apartment and arrested Gibson. In addition to Gibson, his wife and another lady, there was present in the apartment another man whom the officers recognized as a professional bondsman from Kansas City, Kansas, who was not arrested. With Gibson's permission these two officers searched the apartment, but did not go to its closet in the hall. About ten minutes after the Captain and Harlow entered the building, Detectives Hauser and Halteman entered the back door and met Mrs. McCollum who described to them the floor plan of the Gibson apartment and the location of its hall closet. On reaching the second floor hall the detectives noticed that the closet door "was closed but not securely shut." Detective Hauser, with his pistol drawn, opened the closet door and there, lying on his back on the closet floor, was Herbert Phelps looking into the barrel of Hauser's pistol. He was directed to "get up easy" and told that he was under arrest for investigation of the armed robbery of Mr. Thompson earlier that day. Detective Halteman then searched defendant and took from his left breast pocket a .32 high-shot owlhead fully-loaded pistol. After handcuffing him, his person was further searched and three or four hypodermic needles, and other articles commonly used by drug addicts, were found and seized.

The description of one of the two hold-up men matched somewhat the descriptions of both the men seen the evening before by Mrs. McCollum in and around the Ford automobile bearing the same license number of the automobile seen to leave the hold-up scene. The officers knew one of the men around this automobile the evening before was Frank Gibson and the description met that of Gibson; they went to the Gibson apartment to arrest Gibson and, if they could find him there and identify him, to arrest the second man known to have participated in the Thompson robbery, whoever he might be; and, in the opinion of the officers, defendant also met the description of one of the hold-up men.

Considering the above related facts and circumstances in their totality the court could find, as it did, that the arrest of the defendant without a warrant was lawful, and that the subsequent search of his person and seizure of the articles described in the information were incidental to that arrest.

■ Officers may arrest, without a warrant, one whom they have reasonable cause to believe is guilty of a recent felony. State v. Campbell, Mo., 262 S.W.2d 5; 6 C.J.S. Arrest § 6, page 587. This court has said, "What constitutes 'a reasonable and probable ground of suspicion is incapable of exact definition, beyond saying that the officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes. In other words, he must be actuated by such motives as would influence a reasonable man acting in good faith; * * *.' Russo v. Miller, 221 Mo.App. 292, 3 S.W.2d 266, 269 [6]." State v. Cantrell, Mo., 310 S.W.2d 866, 869 [6]. There was reasonable cause for the officers to believe defendant was one of the hold-up men and the court did not err in overruling the motion to suppress for the assigned reason that the arrest was unlawful.

■ When a person has been lawfully arrested officers may take from him articles of evidentiary value without violating his constitutional guaranties against unreasonable searches and seizures. State v. Raines, 339 Mo. 884, 98 S.W.2d 580; 79 C.J.S. Searches and Seizures § 26, page 795; State v. Cantrell, supra. The .32 caliber revolver and the three .32 caliber shells were lawfully seized as a result of a lawful search incidental to a lawful arrest. The use of these articles in evidence would not, as defendant contends, compel him to testify against himself in violation of his constitutional rights. 22A C.J.S. Criminal Law § 650, pages 544–545; State v. Charles, Mo., 268 S.W.2d 830, 834–835.

■ The arrest, search and seizure were lawful; therefore, the testimony of the police officers relating to the search, the articles seized, and the place and circumstances under which the search and seizure was made was competent evidence. State v. Cochran, Mo., 366 S.W.2d 360, 362 [3, 4]; State v. Davenport, Mo., 360 S.W. 2d 710, 711; State v. Hands, Mo., 260 S.W. 2d 14, 20 [10]; State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584–585 [7]; State v. Charles, supra; 22A C.J.S. Criminal Law § 657(7), page 598. Defendant's further contention that the court erred in overruling his motion to suppress that testimony is denied.

At the trial on the merits the defendant's objections to the admission in evidence of the revolver and the three .32 caliber shells, as well as the testimony of the police officers relating to the search, the articles seized. and the place and circumstances under which the search and seizure was carried out for the same reasons assigned in his motion to suppress were overruled by the court, and in points two and three of his brief he contends this was error. What we have said above, without more, adequately disposes of these two assignments and points adversely to defendant.

■ The defendant assigns as error the failure of the Magistrate Judge to appoint counsel to represent him at his preliminary hearing in Magistrate Court. At that hearing he pleaded not guilty. His contention is that by denying him the assistance of counsel at that hearing he was denied a preliminary examination and his right to appear and defend by counsel, and was thereby deprived of due process of law and equal protection of the laws contrary to the Fourteenth Amendment of the Constitution of the United States and Sections 10, 14 and 18(a) of Article I of the Constitution of Missouri. As urged by defendant we have reexamined State v. Turner, Mo., 353 S.W.2d 602 and State v.

Gagallarritti, Mo., 377 S.W.2d 298 in the light of Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, and White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, and we find no reason, including those advanced by defendant, not to adhere to our holdings in Turner and Gagallarritti, supra. Defendant's rights preserved by the Constitution of the United States and the Constitution and laws of Missouri were not violated by the failure to appoint counsel to represent him at his preliminary examination, and we again so hold.

■ The defendant next assigns as error the admission in evidence, over his objection, of the testimony of one of the police officers that the defendant remained silent and refused to answer questions while under arrest. He contends this evidence was not competent and that it compelled him to testify against himself in violation of Article I, Section 19, Constitution of Missouri. Counsel for the state contends and argues that this testimony of Detective Halteman was innocuous and showed merely the physical condition of defendant at the time he was questioned by the officer.

The testimony objected to related an occasion and occurrences when the defendant was under arrest and in custody at police headquarters. Whether the failure of defendant to reply to questions of the officer while in his described condition at the time was, or might have been, considered by the jury as evidence of his guilt, as contended by defendant, or, whether the testimony was offered solely to show, and could be considered only as mere evidence of his physical condition and that he was not in condition to be questioned, as contended by the State's attorney, has given us some concern and is of more than ordinary significance and importance.

The record shows that the following took place during examination by the State's attorney:

"* * * Did you have occasion to talk with this defendant, Phelps, about this robbery that occurred up there on Troost?

"A Yes, sir.

"Q And what—incidentally, you said you got there about 5 o'clock and you made this arrest right around 5 o'clock?

"A It wasn't dark yet and it was in January; it was close to 5 o'clock.

"Q Close to 5 o'clock. All right. Then you talked with him down at headquarters, interrogated him?

"A Attempted to, yes, sir.

"Mr. DeLEVE: I object to any reference to any attempt to interrogate this defendant while he was under arrest.

"THE COURT: Overruled.

"Q (By Mr. Beitling) Interrogate means ask questions, doesn't it?

"A Yes, sir.

"Q All right, you asked questions of him about this thing to give him a chance to explain where he was and what he had to do with it?

"A We attempted to, yes, sir.

"Q Did you have any problems about that, talking with him?

"A He apparently wasn't in any condition to be questioned and just refused to answer questions at all.

"Q What do you mean, he wasn't in any condition? Was he bloody and torn all up?

"A No.

"Mr. DeLEVE: Your Honor, I object to the question for the reason it calls for an improper conclusion on the part of this witness as to the condition of the defendant.

"THE COURT: Well, he may describe his appearance, describe what he saw.

"Q (By Mr. Beitling) Go right ahead, Officer. I want these people to hear everything.

"A He appeared to be under the influence of alcohol or drugs or something similar to that, for he wasn't coherent at the time we were trying to question him at headquarters.

"Q Were you able to learn anything from him concerning where he was when this robbery occurred at some place near the noon hour on January 21?

"A No, sir.

"Q At any time that you talked with him were you able to learn anything about this at all?

"A No, sir."

■ The rule in this state, and the greater weight of authority, is that silence of the accused when not under arrest, and in circumstances such that only a guilty person would remain silent, may be shown. After arrest or while in custody the evidence is inadmissible because he is under no duty to speak. State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755 [4, 5] and the many cases there cited from this and other jurisdictions. Also, see: State v. Foley, 144 Mo. 600, 46 S.W. 733, 736; State v. Allen, Mo., 235 S.W.2d 294, 296; State v. Vainikos, Mo., 366 S.W.2d 423, 427 [4, 5]. Compare: State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756-7 [6-11]; State v. Rush, Mo., 286 S.W.2d 767, 771 [3-6]. The defendant apparently remained silent, in the sense of mute. Was this silence caused by his physical condition?

The officer concludes that it was. The defendant does not refute this conclusion or explain for he did not testify in his own behalf, but he was not required to take the stand and testify even for the limited purpose of refuting the officer's conclusion. What prompted the State's trial attorney to make the inquiry eliciting this testimony and what was its purpose, the prosecution having made a strong submissible case without it? Perhaps the questions asked will shed some light on this. Note again the question: "All right, you asked questions of him about this thing *to give him a chance to explain* where he was and what he had to do with it?" And not being content with the answer that defendant was not in any condition to be questioned and that "[he] just refused to answer at all", note again the further questions. "Were you able to learn anything from him concerning *where he was when this robbery occurred* at some place near the noon hour on January 21?", and, *"At any time that you talked to him were you able to learn anything about this at all?"* (Emphasis ours). Perhaps we could say (although we do not so hold) that had the State's attorney left this subject when the jury had the description of defendant's physical condition, the purpose of the interrogation was only to show that condition and that his rights were not violated. The only case cited by the State on the point to support its contention is State v. Higgins, 311 Mo. 599, 278 S.W. 977, wherein this court held that it was not error to permit the state to show the exhausted condition of defendant when brought back to the scene of the crime under arrest as this was indicative of his recent flight. The court also held that remarks of the prosecuting attorney concerning defendant's condition after arrest did not come within the inhibition of what is now § 546.270 prohibiting reference to defendant's failure to testify. Obviously this, the only case cited by the State to support the admissibility of this evidence and its one answer to defendant's contention, is not applicable.

In State v. Dowling, supra, this court held that the law of this state was otherwise than that announced by an appellate court of California in People v. Graney, 48 Cal.App. 773, 192 P. 460, 461, wherein the latter court said, " * * * that if a defendant [under arrest] *denies* an accusation the incident cannot be shown, but if he merely remains silent or refuses to talk it can be." (Emphasis theirs.)

Considering defendant's condition as described by the officer, there would be some question as to whether defendant heard or understood what was being asked of him and his remaining mute to those questions should not be admissible against him under the circumstances of this case. Had the state affirmatively shown facts and circumstances indicating that he heard and understood, and had he not been under arrest, the evidence would have been admissible.

The evidence that defendant did not respond to the officer's questions while under arrest may well have been considered by the jury in determining his guilt or innocence. We are constrained to hold that the evidence referred to was not competent and that its admission was error prejudicial to defendant.

As to his assignment that instruction No. 3 given by the court was broader than and outside the scope of the information, defendant says that whereas the information charges him with stealing twelve rolls of pennies and three rolls of nickels the instruction erroneously permits the jury to find him guilty if he stole "any money or property" from Thompson. A similar objection was made to a somewhat similar instruction in State v. Trout, Mo., 116 S.W. 2d 103, 104 [5]. The instruction in that case permitted the jury to find defendant guilty if he took "any money and property described in the information." The information charged and all testimony on the issue established the larceny of a cer-

tain quantity of money, as is also true in the case at bar. While the court held that the giving of that instruction was not reversible error, the opinion commented that: "Although the practice is not to be commended, in the instant case, there being no variance between the allegations and the proof in the respect mentioned, the jury must have understood reference was made to the $1,270." Since this case must be remanded for other reasons stated above, counsel for the State might well take another look at the instruction before retrial.

As to his assignment that the court erred in determining and assessing his punishment under the Habitual Criminal Act, defendant says (1) that there was no evidence that he was placed on probation, paroled, fined or imprisoned after having been convicted of a prior offense punishable by imprisonment in the penitentiary, and, (2) that there was no entry of record, prior to submission of findings by the court as to prior conviction, sentence and subsequent imprisonment, etc. The record is bare of evidence that the defendant was placed on probation, paroled, fined or imprisoned for the prior conviction in Jackson County, Missouri, of Burglary, Second Degree, and Stealing, of which conviction and sentence there was proof. The record is also bare of any finding by the court of this prior conviction and sentence and of his being subsequently placed on probation, paroled, fined or imprisoned therefor. Were it not for the error in the admission of evidence for which we must reverse and remand this case for a new trial, the error complained of would have required that the case be remanded for the purpose of holding a hearing on the issue of the applicability of the Habitual Criminal Act as was recently required in State v. Kent, Mo., 375 S.W.2d 40. See also State v. Hill, Mo., 371 S.W.2d 278 and State v. Kent, Mo., 382 S.W.2d 606.

The judgment is reversed and the cause remanded for a new trial.

All concur.